OPINION
{¶ 1} Appellant Theresa Joanne Knox is appealing the judgment of the Jefferson County Court of Common Pleas on matters involving child support, spousal support, and the division of marital property. For the following reasons, the judgment of the trial court is affirmed.
 {¶ 2} Appellee filed the divorce complaint on August 25, 2003. The final evidentiary hearing was held before a magistrate on February 6, 2004. Appellant and Appellee James Knox were married in 1982 and had two children. The record indicates that, at the time of filing the complaint, there was a 17-year old child named Justin still living at home.
 {¶ 3} The record indicates that during the marriage Appellee worked as a supervisor at Safeway, a nationwide scaffolding company. (2/6/04 Tr., pp. 9-10.) Appellant raised the children and did not have regular remunerated employment until the last six years of the marriage. (2/6/04 Tr., pp. 78, 81ff.) In 1998 she was employed as a timekeeper for Appellee's company. Appellant began attending college in August 2003, and it was at this time that Appellee filed for divorce. Appellant was laid off from her position at Safeway in November of 2003.
 {¶ 4} The parties' real estate was appraised at $110,000, which was encumbered by a first mortgage in the amount of $26,000 and a second mortgage totaling $12,000. (2/6/04 Tr., pp. 18, 126.) Appellee was entitled to pension benefits from the Carpenter's Union in the amount of $110,486.73. (2/6/04 Tr., p. 19.) Appellee also possessed an annuity from the Carpenter's Union in the amount of $30,419. (2/6/04 Tr., p. 92.)
 {¶ 5} A considerable amount of the trial involved the valuation of a 32-year old set of scaffolding that was possessed by Appellee. Appellee had retained the scaffolding in lieu of a $35,000 debt that was never paid, and eventually the scaffolding was rented out by Safeway to produce income. (2/6/04 Tr., p. 37.) Appellee identified the scaffolding as scrap, whereas Appellant assigned a value to it of $50,000. (2/6/04 Tr., pp. 37, 119.)
 {¶ 6} It was also revealed at trial that the parties' son Justin had cerebral palsy, which affected his motor skills but not his cognitive abilities. (2/6/04 Tr., p. 81.) Justin was attending Hiram College at the time of the divorce.
 {¶ 7} The magistrate filed findings and recommendations on March 18, 2004. Appellee filed objections on March 30, 2004, followed by objections from Appellant on April 1, 2004. Appellee filed amended objections on June 8, 2004, followed by supplemental objections from Appellant on June 14, 2004.
 {¶ 8} On June 14, 2004, the court held a hearing on the objections. No new evidence was presented at that hearing. The trial court filed findings of fact on June 24, 2004, and filed its decree of divorce on July 14, 2004. Appellee was ordered to pay $2,500 per month in spousal support. The court allowed Appellee to keep his Ohio Carpenter's Pension, and awarded the Carpenter's Fund annuity to Appellant. The court awarded the marital residence to Appellant, along with the second mortgage, while Appellee was given the responsibility for the first mortgage. No child support was awarded beyond June 1, 2004, which was Justin's eighteenth birthday.
 {¶ 9} On August 2, 2004, the trial court held a hearing dealing with a variety of pending motions, one of which was to preserve Appellant's arrearage in overdue spousal support. The trial court filed its journal entry on this matter on August 11, 2004.
 {¶ 10} Appellant filed a notice of appeal on August 13, 2004, referring to both the July 14, 2004, divorce decree and the August 2, 2004, journal entry.
 {¶ 11} Appellant has listed nine assignments of error, which will be regrouped to separately deal with the issues of child support, division of marital property, and spousal support.
 CHILD SUPPORT ASSIGNMENT OF ERROR NO. 1 {¶ 12} "THE MAGISTRATE INCORRECTLY FOUND THAT THERE WAS INSUFFICIENT EVIDENCE THAT THE MINOR CHILD IS DISABLED. NO EVIDENCE CONTRADICTED THE TESTIMONY OF THE DEFENDANT REGARDING JUSTIN'S CONDITION."
 {¶ 13} This assignment appears to deal with the issue of child support. Appellant properly preserved this issue for review by including it in her objections to the magistrate's decision. Appellant is apparently relying on R.C. § 3119.86(A), which states:
 {¶ 14} "(A) Notwithstanding section 3109.01 of the Revised Code, both of the following apply:
 {¶ 15} "(1) The duty of support to a child imposed pursuant to a court child support order shall continue beyond the child's eighteenth birthday only under the following circumstances:
 {¶ 16} "(a) The child is mentally or physically disabled and is incapable of supporting or maintaining himself or herself.
 {¶ 17} "(b) The child's parents have agreed to continue support beyond the child's eighteenth birthday pursuant to a separation agreement that was incorporated into a decree of divorce or dissolution.
 {¶ 18} "(c) The child continuously attends a recognized and accredited high school on a full-time basis on and after the child's eighteenth birthday."
 {¶ 19} Generally, a parent has no duty to continue supporting a child after the child reaches the age of majority. R.C. §3103.03. In Castle v. Castle (1984), 15 Ohio St.3d 279,473 N.E.2d 803, the Ohio Supreme Court created a common-law exception to the general rule for children who are unable to support themselves due to mental or physical disabilities. Id. at paragraph one of the syllabus.
 {¶ 20} It has been said that R.C. § 3119.86(A)(1)(a), "codified the common-law duty imposed on parents to support their children beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority." Traxler v.Traxler, 6th Dist. No. WM-03-011, 2003-Ohio-7270, ¶ 18. In the instant case, the trial court did not order child support beyond the date that Justin would reach the age of majority.
 {¶ 21} Since the trial court's decision in this matter is part of its overall determination of child support, it is reviewed under an abuse of discretion standard. Booth v. Booth
(1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion involves more than an error of judgment; it implies an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 22} R.C. § 3119.86(A)(1)(b) and (c) do not apply to this case, as there is no agreement between the parties concerning child support and it is clear that Justin is no longer attending high school. For Justin to be eligible to continue receiving child support beyond his eighteenth birthday, Appellant must establish that Justin was mentally or physically disabled and was incapable of supporting himself, pursuant to R.C. §3119.86(A)(1)(a).
 {¶ 23} There was some evidence that Justin had cerebral palsy, that he was in therapy from ages two to eight, and that it affected some of his fine motor skills in his hands and toes. The evidence also showed that his cerebral palsy did not affect his cognitive abilities. (2/6/04 Tr., p. 81.) Appellant testified that Justin was attending Hiram College in the pre-med program and was getting good grades. (2/6/04 Tr., p. 81.) There was no evidence presented that Justin was incapable of supporting himself.
 {¶ 24} Simply labeling Justin's condition as "cerebral palsy" does not, in and of itself, establish that Justin was disabled or that he was incapable of supporting himself. There are many degrees of cerebral palsy, and in some cases it may cause few if any outward effects on a person's life. See, e.g., Bryans v.English Nanny Governess School, Inc. (1996),117 Ohio App.3d 303, 309-310, 690 N.E. 2d 582. Thus, the trial court was correct in overruling Appellant's objection and in disallowing child support for Justin after his eighteenth birthday. The evidence did not support the application of R.C. § 3119.86(A)(1)(a). Appellant's first assignment of error is, therefore, overruled.
 DIVISION OF MARITAL PROPERTY {¶ 25} The next five assignments of error deal with the division of marital assets and debts. R.C. § 3105.171 governs the distribution of property in a divorce. The trial court must determine whether particular property is marital or separate in nature and then make a distribution of the property. R.C. §3105.171(B). Separate property is property that a spouse acquired an interest in before the marriage. R.C. § 3105.171(A)(6)(a)(ii). Marital property is real or personal property that is currently owned by either or both spouses and that was acquired by either or both spouses during the marriage. R.C. § 3105.171(A)(3)(a)(i). Any property acquired during the marriage is presumed to be marital unless it can be demonstrated that it is separate. Kampfv. Kampf (May 3, 1991), 11th Dist. No. 90-A-1503.
 {¶ 26} Although the statute does not specifically mention marital debt, it is clear that the trial court's duty to divide marital property includes the allocation of marital debt.Marrero v. Marrero, 9th Dist. No. 02CA008057, 2002-Ohio-4862, ¶ 43.
 {¶ 27} As a general principle, the trial court is called upon to make an equal division of the marital property. R.C. §3105.171(C)(1). If an equal division of marital property would be inequitable to the parties, the court must divide the marital property in a manner that it deems equitable. R.C. §3105.171(C)(1).
 {¶ 28} The trial court is required to consider the following factors, found in R.C. § 3105.171(F), in making its division of marital property:
 {¶ 29} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 30} "(1) The duration of the marriage;
 {¶ 31} "(2) The assets and liabilities of the spouses;
 {¶ 32} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 33} "(4) The liquidity of the property to be distributed;
 {¶ 34} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 35} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 36} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 37} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 38} "(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 39} The trial court's distribution of marital property will not be disturbed on appeal absent an abuse of discretion.Booth, supra, 44 Ohio St.3d at 144, 541 N.E.2d 1028. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore, supra.
 ASSIGNMENT OF ERROR NO. 2. {¶ 40} "THE MAGISTRATE DID NOT PROPERLY VALUE THE MBNA DEBT ATRIBUTED [sic] TO THE PLAINTIFF. THERE WAS TESTIMONY OFFERED THAT THIS CREDIT CARD WAS USED BY THE PLAINTIFF TO PURCHASE ITEMS FOR HIS EMPLOYER AND THAT HE WAS REIMBURSED FOR THESE CHARGES. THUS, ALLOCATING DEBT FOR THE TOTAL AMOUNT IS INEQUITABLE. THE EQUITABLE AMOUNT OF DEBT IS $4,000.00."
 {¶ 41} Appellant properly preserved this error for review by presenting an objection to the magistrate's decision. Appellant contends that the trial court should not have treated the entire amount of $7,500 owed on an MBNA Visa credit card as marital debt. Appellant contends that the true marital value of the debt was $4,000 and that anything above that amount was personal debt incurred by Appellee. Appellant contends that this debt was primarily used for Appellee's motorcycle. Since this debt was allocated to Appellee, it meant that the trial court was required to award him other marital assets to make up for this marital debt. Appellant contends that some marital assets should be transferred back to her once it is determined that the MBNA debt was personal rather than marital debt.
 {¶ 42} The record contains conflicting testimony about the MBNA debt, and it was the duty of the trial court to resolve these evidentiary conflicts. A trial court's determinations concerning the credibility of witnesses are given great deference by a reviewing court. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. Appellee testified that he owed $7,500 on the MBNA card, whereas Appellant testified that the amount was closer to $4,000. (2/6/04 Tr., pp. 39, 128.) Appellant's only comment about the supposed personal nature of this debt was to say: "I would imagine that there is some personal things he put on there * * *.)" (2/6/04 Tr., p. 128.) This was mere speculation on Appellant's part, and is not a basis for finding that the trial court abused its discretion in categorizing this debt as marital debt and awarding it to Appellee. As noted above, there is a presumption that the assets and debts acquired by the parties during the marriage are marital property, and there is insufficient evidence in the record to overcome this presumption. The trial court was within its discretion to accept Appellee's valuation of $7,500 and to reject Appellant's speculation about the personal nature of the debt. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 3. {¶ 43} "THE MAGISTRATE DID NOT ASSIGN A VALUE TO THE SCAFFOLDING NOR DID THE MAGISTRATE MAKE A DEFINITE ORDER AS TO THE DISPOSITION OF THE SCAFFOLDING. THE ORDER, AS MADE, GIVES PLAINTIFF THE DISCRETION WHETHER TO SELL AND TO SET A SALE PRICE WHICH MAY OR NOT BE AN ADEQUATE OR FAIR PRICE. THE MORE APPROPRIATE ORDER WOULD BE FOR THE SCAFFOLDING TO BE PLACED IN ONE LOCATION AND SOLD AT AUCTION."
 {¶ 44} Considerable effort was used by both parties at trial to determine the value of scaffolding that Appellee had acquired many years earlier, as part of an unpaid debt. Both parties filed objections to the magistrate's disposition of the scaffolding. Appellee testified that the scaffolding was 32 years old and that it was rickety, unusable and could not be insured. (2/6/04 Tr., pp. 37-38.) Appellee labeled the scaffolding as "scrap." (2/6/04 Tr., p. 38.) The trial court ordered Appellee to dispose the scaffolding, but gave Appellee discretion to decide between three options in disposing of it. Appellee could sell it at auction; or sell it through a private sale; or deliver the scaffolding to Appellant (who was then presumably required to sell it). The court ordered that the proceeds of the sale would be divided equally between the parties.
 {¶ 45} In this assignment of error, Appellant is only arguing that the trial court should not have given Appellee the discretion as to disposal of the scaffolding. Appellant agrees that the trial court properly ordered that any proceeds be split equally between the parties. There was some testimony that the scaffolding had a significant value at one time, possibly as high as $35,000, but it was clear that its value had diminished considerably over 32 years. Because the scaffolding could not easily be given a precise dollar value, at least not with the evidence presented at trial, the court attempted to create an equitable solution for disposing of the scaffolding. The trial court's determination does not appear to be arbitrary. On the contrary, the trial court attempted to make the best of a difficult problem. We do not find any abuse of discretion in this matter, and this third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 6 {¶ 46} "THE MAGISTRATE ERRED IN DETERMINING THAT THE TIME SHARE IN TREASURE ISLAND, FLORIDA WAS AN INHERITED ASSET AND THE SOLE PROPERTY OF THE PLAINTIFF. THIS ASSET WAS VALUED AT $2,500.00 AND IF PLAINTIFF IS ENTITLED TO THIS ASSET, DEFENDANT SHOULD BE ALLOCATED THE AMOUNT OF $2,500.00 ON HER SIDE OF THE LEDGER AS IT IS HER POSITION THAT SAID TIME SHARE WAS GIVEN TO BOTH PARTIES."
 {¶ 47} As stated earlier, the trial court's decision in designating property as a marital asset or separate property is reviewed for abuse of discretion. See e.g., Peck v. Peck
(1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300.
 {¶ 48} R.C. § 3105.171(A)(6)(a)(i) states:
 {¶ 49} "(6)(a) `Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 50} "(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;"
 {¶ 51} As we stated earlier, there is a presumption that property acquired during the marriage is marital property rather than separate property. See Kampf, supra. Appellant is correct that clear and convincing evidence must be presented to overcome this presumption. R.C. § 3105.171(A)(6)(a)(vii). "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 52} Appellee testified that he owned a time-share property in Treasure Island, Florida, worth $2,500, and that he inherited the property from his aunt. (2/6/04 Tr., pp. 34-35.) Appellant does not point to any evidence contradicting this testimony. The clear and convincing evidence standard may be met by the testimony of a single witness. See, e.g., Baker v. Blevins,162 Ohio App.3d 258, 2005-Ohio-3664, ¶ 13-16. The trial court was free to believe Appellee's testimony, and this evidence is sufficient to overcome the presumption that the time-share property was marital property. Therefore, Appellant's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 7. {¶ 53} "THE COURT ERRED BY REFUSING TO AWARD THE APPELLANT THE MARITAL PORTION OF THE DEFENDANT'S PENSION."
 {¶ 54} The record does not reflect that Appellant filed an appropriate objection to that part of the magistrate's decision awarding Appellee the entire value of the asset labeled as "Ohio Carpenter's pension," valued at $110,486.73. Civ.R. 53(E)(3) and (4) permit parties to bring magistrate's errors to the attention of the trial court so that they may be corrected before the trial court enters judgment. Those same rules also dictate that, "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Civ.R. 53(E)(3)(d). A party who fails to raise a timely and specific objection to an alleged error by the magistrate will be deemed to have waived the ability to challenge that error on appeal. BrottMardis Co. v. Camp (2001), 147 Ohio App.3d 71, 78,768 N.E.2d 1191. In failing to file a proper objection, Appellant has waived any error in this matter on appeal.
 {¶ 55} Even if Appellant had not waived this error for purposes of review, we would have to conclude that this assignment of error is without merit. Appellant does not dispute the valuation of Appellee's pension, nor the overall division of assets, in which she received other assets that made up for her share of the pension. Appellant argues, though, that she should have received one-half of the pension itself in order to give her some security in her own retirement.
 {¶ 56} The trial court's decision to allocate the full pension to Appellee is reviewed for abuse of discretion.Leadingham v. Leadingham (1997), 120 Ohio App.3d 496, 498,698 N.E.2d 465.
 {¶ 57} The Ohio Supreme Court has held:
 {¶ 58} "When considering the pension or retirement fund, the trial court must obtain a result which will preserve the asset so that each party can procure the most benefit. Thus, the trial court must have evidence before it detailing the intricacies and terms of the particular plan. Then, the trial court must make an equitable determination based upon the parties' overall financial situation, whether a direct division, or some other alternative, would be most appropriate to preserve the pension or retirement asset so that each party may derive the most benefit." Hoyt v.Hoyt (1990), 53 Ohio St.3d 177, 181, 559 N.E.2d 1292.
 {¶ 59} The trial court awarded Appellant considerably more in marital assets than was awarded to Appellee ($152,000 versus $144,000). The court also awarded Appellant the marital residence, worth $110,000.00, offset by a second mortgage in the amount of $12,000.00, while assigning the first mortgage amounting to $26,000.00 to Appellee. In addition, Appellant was awarded an annuity plan, labeled as the Ohio Carpenter's Annuity Fund, worth $30,419. An employment-related annuity is normally considered to be a retirement asset. See, e.g., R.C. §§ 5731.09,4141.312, 145.23, 2329.66.
 {¶ 60} At trial, Appellant testified that it was her wish that the court split the pension fund equally (which would have been $55,000 to each party), but award the entire $30,419 Carpenter's Annuity Fund to Appellee. (2/6/04 Tr., pp. 92-93.) The trial court did make some attempt to award part of the retirement benefits to Appellant, although it did not do exactly as Appellant had requested. Although the trial court could have apportioned these assets differently, the division is certainly equitable from Appellant's perspective in that she was given one of the two major assets of the marital estate, part of the retirement assets, and more overall marital assets than Appellee received. There is no abuse of discretion here, and Appellant's seventh assignment of error is overruled.
 SPOUSAL SUPPORT {¶ 61} The following four assignments of error deal with spousal support. After a court makes its determination as to the division and disposition of the marital property, it may award reasonable spousal support to either party. R.C. § 3105.18(A). The trial court must consider the factors listed in R.C. §3105.18(C) when deciding whether to award spousal support:
 {¶ 62} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 63} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 64} "(b) The relative earning abilities of the parties;
 {¶ 65} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 66} "(d) The retirement benefits of the parties;
 {¶ 67} "(e) The duration of the marriage;
 {¶ 68} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 69} "(g) The standard of living of the parties established during the marriage;
 {¶ 70} "(h) The relative extent of education of the parties;
 {¶ 71} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 72} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 73} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 74} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 75} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 76} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 77} A trial court's judgment in awarding or denying spousal support is reviewed for abuse of discretion. Berthelotv. Dezso (1999), 86 Ohio St.3d 257, 258, 714 N.E.2d 888; Kunklev. Kunkle (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83.
 ASSIGNMENT OF ERROR NO. 4. {¶ 78} "THE MAGISTRATE ERRED IN CONSIDERING THAT THE PLAINTIFF/APPELLEE'S EXPENSES WERE INFLATED BECAUSE:
 {¶ 79} "a) HIS COMPANY PAYS FOR HIS HOUSING EXPENSES;
 {¶ 80} "b) PLAINTIFF/APPELLEE RECEIVES $12,000.00 A YEAR FOR A PER DIEM FROM HIS EMPLOYER THAT WAS NOT CONSIDERED AND SHOULD HAVE BEEN FACTORED INTO HIS TOTAL GROSS EARNINGS."
 {¶ 81} Appellant appears to be arguing that the trial court misjudged Appellee's income when considering the level of spousal support that Appellant was to receive. The income of the parties is one of the factors a trial court must consider in awarding spousal support. R.C. § 3105.18(C)(1)(a).
 {¶ 82} Appellant first argues that the trial court failed to consider that Appellee receives a housing allowance. Appellant does not actually present an argument here, but only quotes a section of the trial transcript. Appellant, though, has failed to point out that Appellee's housing allowance was scheduled to end in May 2004. (2/6/04 Tr., p. 13.) The trial court was free to believe Appellee's testimony on this issue and disregard any housing allowance in its final determination of spousal support.
 {¶ 83} Appellant further argues that the trial court failed to consider that Appellee receives a $12,000 annual per diem allowance from his employer. The trial court noted, in its response to Appellant's objections, that Appellant failed to cite any part of the transcript to support her argument. For this reason, the trial court overruled Appellant's objection. (6/24/04 Findings of Fact, p. 4.)
 {¶ 84} Civ.R. 53(E)(3)(c) states:
 {¶ 85} "(c) Objections to magistrate's findings of fact. If the parties stipulate in writing that the magistrate's findings of fact shall be final, they may object only to errors of law in the magistrate's decision. Any objection to a finding of factshall be supported by a transcript of all the evidence submittedto the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available." Emphasis added.
 {¶ 86} In essence, the trial court determined that Appellant had waived this error by not supporting it with references to the transcript, as required by Civ.R. 53(E)(3)(c). Normally, a party is required to apprise the trial court of any material and prejudicial errors at the earliest opportunity in order to allow the trial court to correct the error. LeFort v. Century21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 123,512 N.E.2d 640. This is particularly true when the matter has been referred to a magistrate, since Civ.R. 53(E) requires such errors to be raised by specific objections with citations to the record. Because this error was waived at the trial court level, it would also be deemed as waived during appellate review.
 {¶ 87} Even if this alleged error were not waived, though, it is clear that the magistrate and the trial court did consider Appellee's housing allowance and per diem allowance as part of its spousal support decision. (3/18/04 Decision, p. 6.) Therefore, Appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 5. {¶ 88} "THE MAGISTRATE ERRED IN ORDERING THAT THE SPOUSAL SUPPORT TERMINATE BEFORE MARCH 31, 2009 IF THE DEFENDANT SHOULD REMARRY OR COHABIT PRIOR THERETO. THIS IS A VERY LONG-TERM MARRIAGE WHICH MERITS PERMANENT ALIMONY UNDER THE LAW WITHOUT ANY CONTRAINTS [sic]. THE MAGISTRATE'S PRONOUNCEMENT PROHIBITING DEFENDANT FROM COHABITING OR SUFFERING THE LOSS OF SPOUSAL SUPPORT IS DISCRIMINATORY, SEXIST AND STAINED WITH OUTMODED PURITANICAL THOUGHTS, ESPECIALLY IN LIGHT OF THE FACT THAT THERE IS NO SUCH PROHIBITION PREVENTING PLAINTIFF FROM CONTINUING TO COHABIT WITH HIS PARAMOUR. THE DETERMINATIVE FACTORS LISTED IN O.R.C. SECTION 3105.18 DO NOT LIST COHABITATION AS A REASON TO CURTAIL OR TERMINATE SPOUSAL SUPPORT."
 {¶ 89} Appellant has preserved this issue by filing a timely objection to the magistrate's decision. Appellant appears to believe that the trial court placed some type of moral or ethical limitation on her spousal support by ordering that spousal support would terminate upon "cohabitation" with someone. Appellant specifically objects to that part of the trial court order terminating spousal support if one of the following events occur: "the death of either party, the remarriage or cohabitation of the Defendant, or the expiration of sixty (60) months (March 31, 2009)." (7/14/04 Divorce Decree, pp. 2-3.)
 {¶ 90} Ohio courts have held that, under proper circumstances, cohabitation can constitute grounds for the termination of spousal support. Wolfe v. Wolfe (1976),46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413; Taylor v. Taylor
(1983), 11 Ohio App.3d 279, 11 OBR 459, 465 N.E.2d 476; Millerv. Miller (1989), 61 Ohio App.3d 269, 572 N.E.2d 742.
 {¶ 91} "Cohabitation" implies more than mere sexual relations between two parties. Thomas v. Thomas (1991),76 Ohio App.3d 482, 485, 602 N.E.2d 385. "`Cohabitation,' when used in a divorce decree as a condition for termination of spousal support, is used as a substitute for `remarriage.'" Gatto v. Gatto (July 19, 1995), Summit App. No. 17121. The condition is used to preclude the recipient of spousal support from obtaining the financial benefits of remarriage while also avoiding the termination of spousal support. Taylor v. Taylor (1983), 11 Ohio App.3d 279,280, 11 OBR 459, 465 N.E.2d 476.
 {¶ 92} Appellant objects that no cohabitation restriction was placed on Appellee. We observe, though, that Appellee is the party paying spousal support, and that it would be detrimental to Appellant if Appellee could be relieved of his spousal support obligations upon a finding that he was cohabitating with someone. If such a condition were placed on Appellee, he might attempt to cohabitate with someone for the sole purpose of terminating his spousal support obligation. We are not persuaded by Appellant's arguments, and this fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 9. {¶ 93} "THE MAGISTRATE FAILED TO ALLOCATE A PROPER AMOUNT OF SPOUSAL SUPPORT TO COMPENSATE THE APPELLANT FOR LIVING EXPENSES AND COLLEGE EXPENSES AND THE MAGISTRATE DID NOT TAKE INTO ACCOUNT THE DEFENDANT/APPELLANT'S PROJECTED COLLEGE TUITION EXPENSE OF $6,770.00 WHEN DETERMINING THE REHABILITATIVE SPOUSAL SUPPORT."
 {¶ 94} Appellant properly preserved this issue for review by filing an objection to the magistrate's decision. Appellant appears to be arguing that there is some right in Ohio to rehabilitative spousal support. Appellant is apparently referring to a spousal support award specifically designated for vocational training or further education for the purpose of obtaining employment. Although Appellant provides no legal support for this notion, some courts have held that rehabilitative spousal support is permitted in Ohio. "The trial court has discretion to award spousal support to help the spouse obtain education to qualify her for appropriate employment." McClure v. McClure (1994),98 Ohio App.3d 27, 39, 647 N.E.2d 832. The spousal support statute does not use the phrase "rehabilitative spousal support," but the concept is, to some degree, contained in the spousal support factor listed in R.C. § 3105.18(C)(1)(k):
 {¶ 95} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;"
 {¶ 96} Contrary to Appellant's argument, the trial court did, in fact, consider Appellant's ongoing education expenses in awarding spousal support. (3/18/04 Decision, p. 5; 6/24/04 Findings of Fact, pp. 3, 5.) The court noted that her annual education expenses amounted to $6,770.00, or $564.17 per month. Appellant does not describe any particular reason why her monthly spousal support of $2,500.00 would be insufficient to pay for her educational expenses. For these reasons, Appellant's ninth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 8. {¶ 97} "THE TRIAL COURT INCORRECTLY CREDITED THE APPELLEE FOR $750.00 AS SPOUSAL SUPPORT ARREARAGES THAT WAS NOT SUPPORTED BY EVIDENCE OTHER THAN APPELLEE'S SELF-SERVING STATEMENTS THAT HE PAID CASH PAYMENTS TO APPELLANT."
 {¶ 98} This issue involves the August 11, 2004, journal entry filed by the Jefferson County Court of Common Pleas. The trial court calculated the value of the spousal support arrearages owed to Appellant, and also calculated the credits due to Appellee for various payments that he had made and for other setoffs. The court found, inter alia, that Appellee was entitled to three setoffs of $250 each, for a total of $750. (8/11/04 Journal Entry, p. 2.) Appellant contends that the trial court should not have credited Appellee with these three setoffs.
 {¶ 99} Appellant admits that Appellee himself testified to these three direct cash payments to her, and she even cites to the precise point in the transcript where these payments are mentioned. (8/2/2004 Tr., p. 79.) Appellant discounts this as Appellee's self-serving testimony. In truth, all evidence that a party presents in order to establish its case is self-serving to some degree, and the trier of fact must always take this into account in weighing the evidence. See, e.g., State ex rel.Ferguson v. Court of Claims of Ohio, Victims of Crime Div.,98 Ohio St.3d 399, 2003-Ohio-1631, 786 N.E.2d 43, ¶ 18. The record also indicates that Appellant herself testified that Appellee made a number of payments of $250 directly to her. (8/2/2004 Tr., p. 45.) The trial court was free to believe both parties' testimony on this issue, and to credit Appellee for $750 toward his spousal support arrearage based on that testimony. Since the testimony of both parties appears to establish that these cash payments took place, Appellant's eighth assignment of error is overruled.
 {¶ 100} Based on the foregoing analysis, all of Appellant's assignments of error are hereby overruled, and the judgment of Jefferson County Court of Common Pleas is affirmed in full.
Donofrio, P.J., concurs.
Vukovich, J., concurs.