[Cite as *Pariano v. Pariano*, 2016-Ohio-560.]

STATE OF OHIO, CARROLL COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| LAURA S. PARIANO, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | CASE NO. 15 CA 904 |
| V. | ) | |
| | ) | OPINION |
| FRANK M. PARIANO, JR. | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Court of Common Pleas, Domestic Relations Division of Carroll County, Ohio
Case No. 13 DRB 27611

JUDGMENT:    Affirmed

APPEARANCES:
For Plaintiff-Appellant    Attorney Arnold F. Glantz
4883 Dressler Rd. NW
Canton, Ohio 44718

For Defendant-Appellee    Attorney Richard L. Fox
122 South Wooster Avenue
Strasburg, Ohio 44680

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: February 12, 2016

DONOFRIO, P.J.

{¶1} Plaintiff-appellant, Laura Pariano, appeals from a Carroll County Common Pleas Court Domestic Relations Division judgment granting a divorce to her and defendant-appellee, Frank Pariano.

{¶2} The parties were married on September 24, 1983. Two children, who are now emancipated, were born of the marriage. The parties separated on July 11, 2013, when appellant moved out of the marital home.

{¶3} Appellant filed for divorce on August 2, 2013. The matter went to trial. The trial court granted the parties a divorce. It made the following findings relevant to this appeal.

{¶4} From the date appellant left the marital home, she has contributed nothing to the parties' marital debts and has incurred substantial additional credit card debt. Therefore, the court found that for the purposes of the equitable division of marital property, "during the marriage" was from September 24, 1983 to July 11, 2013. The court ordered that appellee was responsible for paying the balance on the Bank of America Visa and any other credit card balances he incurred since July 11, 2013. It ordered that appellant was responsible for paying any balances on her JC Penny credit card, her Elder-Beerman credit card, her Dillard's credit card, her Macy's credit card, the Best Buy credit card, the Value City credit card, the Kohl's credit card, her Victoria's Secret credit card, and her credit card from The Limited. The court found that appellant incurred "most, if not all" of these debts since the termination date of the marriage.

{¶5} The court then considered the statutory spousal support factors. It found that although appellant was currently unemployed, she had the ability to earn between $25,000 and $30,000 per year. The court based this figure on appellant's pervious annual wages. The court found that over the past three years, appellant averaged taxable earnings of $29,071. It found that over this same period, appellee averaged taxable income of $67,749, with a disposable income after taxes of $47,749. In order to equalize the incomes of the parties, the court ordered appellee to pay appellant spousal support of $900 per month for nine years. In making this

award, the court took into consideration the evidence that appellant "has chronic health problems, an alcohol abuse issue, and appears to also have an issue with prescription drugs * * * [however appellant] is physically capable of working a full-time job earning $29,000 per year."

{¶6} Appellant filed a timely notice of appeal on March 20, 2015. She now raises three assignments of error.

{¶7} Appellant's first assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE MARRIAGE TERMINATED WHEN LAURA MOVED OUT INSTEAD OF THE DATE OF THE FINAL DIVORCE HEARING.

{¶8} The trial court determined that for the purpose of the equitable division of debts and assets, the end date of the marriage was the day appellant moved out of the marital home, or July 11, 2013. The court found that "from the date she left" appellant "contributed nothing to the marital debts of the parties, and has in fact incurred substantial additional credit card debt."

{¶9} Appellant argues the court abused its discretion in using the day that she moved out of the marital home as the end date of the marriage. She asserts the court should have used the date of the final divorce hearing instead. Appellant claims the court is to use the date of the final divorce hearing unless the evidence clearly and bilaterally shows a breakdown in the marriage. She points out that the parties attended marriage counseling after she moved out thereby demonstrating they were trying to reconcile. And she notes the parties maintained a joint checking account through September 2013.

{¶10} The trial court has broad discretion in choosing the appropriate marriage termination date and we will not disturb its decision on appeal absent an abuse of that discretion. *Berish v. Berish*, 69 Ohio St.2d 318, 321, 432 N.E.2d 183 (1982). Abuse of discretion connotes more than an error in judgment; it implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. *Blakemore v.*

*Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶11} The time period of "during the marriage" is the period of time from the date of the marriage through the date of the final divorce hearing unless the trial court determines that the use of either or both of these dates would be inequitable. R.C. 3105.171(A)(2)(a)(b). If the court finds that the use of either or both of the specified dates would be inequitable, the court may select dates that it considers equitable in determining marital property. R.C. 3105.171(A)(2)(b).

{¶12} Generally, trial courts use a de facto marriage termination date when the parties separate, make no attempt to reconcile, and continually maintain separate residences, business activities, and bank accounts. *O'Brien v. O'Brien*, 8th Dist. No. 89615, 2008-Ohio-1098, ¶41, citing *Gullia v. Gullia*, 93 Ohio App.3d 653, 666, 639 N.E.2d 822 (8th Dist.1994).

{¶13} Appellant testified that she left the marital residence on July 11, 2013. (Tr. 37). Appellee stated that appellant simply left without telling him what she was doing. (Tr. 217). The parties attended one marriage counseling session after appellant left. (Tr. 74). However, appellant had already filed for divorce at that time and she referred to the counseling session as "a joke." (Tr. 74). Appellant also testified that after she left the marital home on July 11, 2013, she made no payments toward anything related to the house. (Tr. 136). And appellant agreed that since July 11, 2013, she had not contributed financially to the marital debts of the parties. (Tr. 148). Moreover, appellee testified that the parties' joint checking account had been closed and he had opened a new account solely in his name. (Tr. 233).

{¶14} Additionally, the testimony indicated that appellant incurred debts on numerous credit cards after leaving on July 11, 2013. When appellant left, she had credit cards for JC Penney, Elder-Beerman, Dillard's, Macy's, Victoria's Secret, The Limited, and Kohl's. (Tr. 98, 131-132, 146-147). The only cards appellant testified that had an outstanding balance when she left were the Dillard's card and the Elder-Beerman card. (Tr. 99, 132-134, 146-147). After leaving the marital home, appellant made purchases using all of these cards. (Tr. 98, 131-132, 146-147). And after

appellant left on July 11, she opened credit cards for Best Buy and Value City and incurred debts on these cards as well. (Tr. 99-100; 135).

{¶15} The evidence demonstrates the trial court did not abuse its discretion in setting July 11, 2013, as the de facto termination date of the marriage. Appellant left the marital home on that date and never returned. After she left, appellant incurred new debts on seven credit cards and opened two new credit cards on which she incurred additional debt. And although the parties attended one marriage counseling session, appellant had already filed for divorce by that time and described the counseling session as "a joke." Thus, there was no real attempt at reconciliation. Given this evidence, we cannot conclude that the trial court acted arbitrarily, unreasonably, or unconscionably in setting July 11, 2013, the day appellant left, as the de facto end date of the marriage.

{¶16} Accordingly, appellant's first assignment of error is without merit.

{¶17} Appellant's second assignment of error states:

THE TRIAL COURT'S DIVISION OF MARITAL PROPERTY WAS AN ABUSE OF DISCRETION BECAUSE IT FAILED TO ASSIGN A VALUE TO THE MARITAL DEBTS.

{¶18} In its judgment entry, the trial court ordered that appellant would be responsible for any balances on her JC Penney credit card, her Elder-Beerman credit card, her Dillard's credit card, her Macy's credit card, her Victoria's Secret credit card, her Limited credit card, the Best Buy card, the Value City card, and the Kohl's credit card. The court found that appellant had incurred "most, if not all of these expenditures since the date of the termination of the marriage of July 11, 2013."

{¶19} Appellant now asserts that the trial court erred in failing to assign a value to these marital debts. She further asserts the court erred in failing to specifically determine how much of the balance on each of the above-listed credit cards was incurred before July 11, 2013. However, appellant admits that the record does not contain evidence of the balances of most of the credit cards. Appellant

argues the trial court was obligated to place a value on the marital debt.

**{¶20}** Trial courts are vested with broad discretion in dividing marital property. *Bisker v. Bisker*, 69 Ohio St.3d 608, 609, 635 N.E.2d 308 (1994). The division of marital property shall be equal unless an equal division would be inequitable. R.C. 3105.171(C)(1). The trial court's duty to divide marital property also includes the allocation of marital debt. *Knox v. Knox*, 7th Dist. No. 04 JE 24, 2006-Ohio-1154, ¶26, citing *Marrero v. Marrero*, 9th Dist. No. 02CA008057, 2002-Ohio-4862, ¶43.

**{¶21}** Initially, we should note that given our resolution of appellant's first assignment of error, the end date of the marriage was July 11, 2013, and any debt incurred by appellant after this date was her separate debt, not marital debt.

**{¶22}** Appellant testified that when the parties separated, she had credit cards for JC Penney, Elder-Beerman, Dillard's, Macy's, Victoria's Secret, The Limited, and Kohl's. (Tr. 98, 131-132, 146-147). Appellee stated that he did not use any of these credit cards. (Tr. 232).

**{¶23}** Appellant testified that she did not believe that the JC Penney card had a balance on it when the parties separated. (Tr. 132).

**{¶24}** Appellant testified that the Macy's account had a zero balance when the parties separated. (Tr. 99; Def. Ex. V).

**{¶25}** Appellant testified that the Kohl's credit card had a zero balance when the parties separated. (Tr. 147). She stated that it now had a $300 balance. (Tr. 147).

**{¶26}** Appellant testified that the Elder-Beerman credit card did have a balance on it when the parties separated but she did not know what the balance was. (Tr. 132-133). She further testified that she made purchases with the Elder-Beerman card since the separation. (Tr. 133).

**{¶27}** Appellant testified that the Dillard's card had a balance when the parties separated of "probably a couple thousand." (Tr. 133). She stated that she used the Dillard's card since the separation and it now had a balance of "probably 8 grand." (Tr. 134).

**{¶28}** Appellant stated that she could not remember if the Victoria's Secret credit card had a balance on it before the parties separated. (Tr. 146). However, she did make a purchase with it after the separation. (Tr. 146).

**{¶29}** Likewise, appellant could not remember if The Limited credit card had a balance when the parties separated. (Tr. 147). But there was a current balance on it. (Tr. 147).

**{¶30}** Appellant testified that after the parties separated, she opened a Best Buy credit card that she had not paid off. (Tr. 99-100; Def. Ex. W). She stated that the balance was a "couple thousand." (Tr. 135). She also testified she opened a Value City credit card that had approximately a $1,500 balance. (Tr. 131).

**{¶31}** Appellant also testified that the parties had a joint Bank of America Visa card at the time they separated. (Tr. 135). She stated that she used the Visa after the separation but appellee made all of the payments on that card. (Tr. 135). Likewise, appellee testified this credit card was used for household items by both parties. (Tr. 231).

**{¶32}** Appellant takes issue with the court's failure to assign a value to each of these credit cards. But the parties did not provide the court with any documentation as to the balances on those accounts.

**{¶33}** A property distribution is derived solely from the evidence offered by the parties. *Ervin v. Ervin*, 7th Dist. No. 96 CA 177, 1999 WL 528800, at *7 (July 16, 1999).

**{¶34}** In a Twelfth District case, the appellant argued he was denied a fair trial because the trial court failed to value all of the parties' debts and assets and divide the debts and assets equitably. The court pointed out, however, that the parties did not submit evidence of the value of their property. The court stated that "the lack of valuation by the parties would be invited error." *Pettit v. Pettit*, 12 Dist. No. CA2011-08-018, 2012-Ohio-1801, ¶30.

**{¶35}** In a Fourth District case, the trial court ordered the appellee to pay the balances on the Kohl's card debt and the Elder-Beerman card debt. The trial court

did so without assigning values to these debts. The appellant argued on appeal that the trial court could not have equitably divided the marital debt without first placing values on each of the debts. But the appellate court found the appellant had waived this issue on appeal because he failed to present any evidence as to the value of the Kohl's card debt or the Elder-Beerman card debt. *Machesky v. Machesky*, 4th Dist. No.10CA3172, 2011-Ohio-862, ¶12. Quoting the Tenth District, the court stated: "[W]e believe that, 'if a party fails to present sufficient evidence of valuation, that party has presumptively waived the right to appeal the distribution of those assets [or debts] because the trial court can only make decisions based on the evidence presented[.]'" *Id.*, quoting, *Roberts v. Roberts*, 10th Dist. No. 08AP-27, 2008-Ohio-6121, ¶22. See also, *Kautz v. Kautz*, 5th Dist. No. 2011CA00034, 2011-Ohio-6547, ¶¶15-16 (also stating that when a party fails to present evidence as to an item's value it is akin to invited error).

**{¶36}** In this case, neither party presented evidence as to the balances owed on the above-referenced credit cards. Appellant gave some general testimony about the approximate balances on some of the cards, but there was no testimony or documentary evidence showing the exact balances. Therefore, appellant cannot now assert that the trial court abused its discretion in failing to assign values to each of the credit card debts. The trial court had no evidence before it from which to assign values as to each card's balance. Moreover, the end date of the marriage was July 11, 2013. Therefore, any debt appellant incurred after this date was her separate debt.

**{¶37}** Accordingly, appellant's second assignment of error is without merit.

**{¶38}** Appellant's third assignment of error states:

BECAUSE LAURA SUFFERS FROM CHRONIC HEALTH PROBLEMS, THE COURT ABUSED ITS DISCRETION IN IMPUTING INCOME TO HER, WHICH RESULTED IN A SPOUSAL SUPPORT AWARD THAT WAS NEITHER APPROPRIATE NOR REASONABLE.

**{¶39}** In her final assignment of error, appellant contends the trial court abused its discretion in fashioning its spousal support award. She contends the court erred in imputing annual income to her in the amount of $29,000. She points to evidence that she was fired from her job of 16 years after she used up her Family Medical Leave. She asserts the evidence demonstrated that she is unable to work due to debilitating migraines, depression, chronic fatigue syndrome, osteoporosis, and arthritis.

**{¶40}** We review matters surrounding spousal support decisions for an abuse of discretion. *Corradi v. Corradi*, 7th Dist. No. 01-CA-22, 2002-Ohio-3011, ¶51.

**{¶41}** In determining whether a spousal support award is appropriate and reasonable and in fashioning that award, the trial court shall consider:

(a) The income of the parties, from all sources, * * *;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1).

{¶42} In this case, the trial court analyzed each of the applicable factors. The trial court then ordered appellee to pay spousal support to appellant in the amount of $900 per month for a period of nine years. It made this order after finding that appellant was "physically capable of working a full-time job earning $29,000 per year." The court made the following factual findings.

{¶43} Appellee is self-employed at Downtown Petroleum. Appellee's net business income from 2008 to 2012 ranged from $41,619 to $77,906, before taxes. Appellant's yearly salary from 2008 through 2012 ranged from $25,417 to $32,092. (R.C. 3104.18(C)(1)(a)).

{¶44} Appellant was terminated from her employment on January 27, 2014, the main reason being her absences from work. When she was terminated, both parties lost their health insurance. Appellant had worked at H-P Products for 16 years. In August 2013, appellant had requested leave under the Family Medical Leave Act due to her alleged serious health condition that rendered her unable to perform her job. The serious health condition was severe migraines, which her doctor indicated had commenced in 2008, and was a probable life-long condition. During the marriage, both parties contributed to the marital expenses. Appellant has

the ability to earn between $25,000 and $30,000 per year. (R.C. 3104.18(C)(1)(b)).

{¶45} Both parties are approximately the same age. Both parties have physical ailments and appellant has had prior emotional problems, which the court found are related to her current abuse of alcohol and prescription medication. (R.C. 3105.18(C)(1)(c)).

{¶46} Neither party has any retirement benefits other than the annuities and a 401(K) previously divided. Both parties will be eligible for social security benefits at the appropriate age. (R.C. 3104.18(C)(1)(d)).

{¶47} The marriage was of a 30-year duration. (R.C. 3104.18(C)(1)(e)).

{¶48} The parties' children are now emancipated. (R.C. 3104.18(C)(1)(f)).

{¶49} The parties agreed they had a good standard of living during the marriage. But they placed all of their earnings into annuities and 401(K) benefits and do not have significant savings. (R.C. 3104.18(C)(1)(g)).

{¶50} Appellant has her GED. Appellee has his high school diploma. Neither party has a college education. (R.C. 3104.18(C)(1)(h)).

{¶51} The parties own a home with an appraised value of $90,000 and a mortgage balance of $55,428.01. The parties own various items of personal property valued at $47,880. (R.C. 3104.18(C)(1)(i)).

{¶52} Neither party has contributed to the education, training, or earning ability of the other party. (R.C. 3104.18(C)(1)(j)).

{¶53} The tax consequence of any support award will be that it will be taxable to appellant and deductible by appellee on their tax returns. (R.C. 3104.18(C)(1)(l)).

{¶54} The evidence presented by the parties supports the trial court's findings.

{¶55} Appellant testified that she has several chronic health problems. She stated that she suffers from debilitating migraines and chronic fatigue syndrome. (Tr. 39). She stated she has a birth defect where she only has one kidney. (Tr. 39). And she testified she was diagnosed with depression. (Tr. 39). Appellant testified that these ailments led to her inability to work. (Tr. 43). However, appellant did not have

a doctor's directive that she should not work. (Tr. 44). Appellant stated she used up her leave under the Family Medical Leave Act when she suffered from migraines and depression and then her employer terminated her. (Tr. 44). But she also testified that she had no medical statements from any doctors or psychiatrists stating that she was unable to work. (Tr. 111). And she stated that she suffered from migraines for several years while she was married and she was still able to work. (Tr. 111).

{¶56} Appellant also presented the court with a list of her medications including anti-anxiety medication, sleep medication, cholesterol medication, and pain medication. (Tr. 49-50, 66). She testified that she should not consume alcohol while taking these medications, but she consumed alcohol anyhow. (Tr. 51-52). Appellant admitted to drinking between three and six beers at a time. (Tr. 52-53).

{¶57} Appellant testified that she worked at HP Products for 16 years before she was fired. (Tr. 77). She stated that she had migraines during this time and had average attendance but was never in danger of losing her job. (Tr. 77-78). She also testified that for at least the first half of the marriage, she was the higher wage earner. (Tr. 153). Appellant testified that it was only in the last 12 or 13 years when appellee started his own business that he earned more than her. (Tr. 153).

{¶58} Appellant's tax returns reflected that she earned $32,092.31 in 2012, and $29,786 in 2011. (Tr. 81, 88; Def. Exs. K, L, M).

{¶59} Appellant testified that she planned to go to college and start her own business. (Tr. 53). She stated she had not applied for social security disability because she wanted to go back to school and go to work. (Tr. 85-86). She stated she needed to go to college because she wanted to get a "desk job" where she did not have to do any lifting. (Tr. 86). Appellant testified that she was currently earning $60 per week cleaning houses two days a week. (Tr. 110).

{¶60} When appellant moved out of the marital home, she stayed with her friend Carol Clevenger until May 2014. (Tr. 165-166). Clevenger testified that during this time appellant drank "just about every day" and could drink 12 to 18 beers in a day. (Tr. 166-167). On these days, appellant did not go to work. (Tr. 167).

Clevenger stated appellant did not go to work very often when she was staying with her. (Tr. 167). She testified appellant usually slept instead of going to work. (Tr. 172).

**{¶61}** Appellee testified that in 2011, he earned $63,461 and in 2012, he earned $68,177. (Tr. 225-226; Def. Exs. K, M). He testified that he completed high school and appellant received her GED. (Tr. 243, 245). Appellee stated that early in the parties' marriage they earned about the same amount. (Tr. 243). Then appellant received a large raise and she earned more than he did for a while until he started his own business. (Tr. 243). Appellee testified that both parties had annuities and 401(K)'s but did not have traditional pensions or other retirement benefits. (Tr. 244). Appellant stated that early in their marriage their standard of living was "pretty tough" but in the last 10 to 15 years it was "pretty good." (Tr. 245). Appellee testified that he currently has a high white blood cell count that his doctors were looking into. (Tr. 235).

**{¶62}** Appellee testified that appellant had a problem with alcohol during the past five to seven years but that it did not cause her to miss work. (Tr. 246, 248). He stated that up until she left the marriage, appellant worked "pretty much every day." (Tr. 248-249). Appellee stated that even though appellant suffered from migraines, they did not prevent her from working. (Tr. 251-252).

**{¶63}** Appellant's argument here is that the court should not have imputed $29,000 in annual income to her because she is unable to work due to her various ailments. But the evidence supports the trial court's judgment.

**{¶64}** The evidence demonstrated that appellant worked throughout the 30-year marriage. During this time, appellant suffered from multiple health problems. However, her health issues never kept her from working. Appellant has no doctor's excuse for not working and does not plan to file for social security disability. Appellant earned a yearly salary of approximately $30,000 when she was terminated. The evidence suggested that appellant stopped going to work because of her drinking. Her absences ultimately led to her termination.

**{¶65}** Based on this evidence, we cannot conclude the trial court abused its discretion in imputing income to appellant of $30,000 per year and in considering that income in fashioning its spousal support award.  In addition to this factor, the trial court carefully analyzed each of the applicable statutory factors before rendering its spousal support award and its findings are supported by evidence in the record. Accordingly, appellant's third assignment of error is without merit.

**{¶66}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.