OPINION
{¶ 1} Appellant Ronald H. Dooley appeals from his divorce in the Fairfield County Court of Common Pleas, Domestic Relations Division. Appellee Nancy J. Dooley is appellant's former spouse. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee were married in North Canton, Ohio, in 1983. One child, now emancipated, was born of the marriage. The parties primarily owned and operated several court reporting schools during the marriage. Two of those schools, the Independent Education Corporation and the Elsa Cooper Institute, were still being operated by the parties as of the time of initiation of the divorce. Another of the schools, Technology Education College, located in Columbus, Ohio, was sold to a corporate entity in 2002 for approximately $4,000,000.00. The parties owned two homes and had other significant assets, as further discussed infra.
 {¶ 3} On October 10, 2002, appellee filed a divorce complaint in the Fairfield County Court of Common Pleas. Appellant thereupon filed an answer and counterclaim. The matter proceeded to a trial on March 10, 2005 and June 16, 2005. In lieu of closing arguments, each party submitted proposed findings of fact and conclusions of law. The trial court issued its findings of fact and conclusions of law on October 26, 2005, and its judgment entry/decree of divorce on November 30, 2005.
 {¶ 4} Appellant filed a notice of appeal on December 28, 2005. He herein raises the following nine Assignments of Error:
 {¶ 5} "I. THE TRIAL COURT ERRED IN VALUING THE PARTIES' BERTRAM BOAT AT $40,000.00 AND THEN PLACING IT ON DEFENDANT-APPELLANT'S SIDE OF THE BALANCE SHEET FOR DIVISION OF PROPERTY PURPOSES.
 {¶ 6} "II. THE COURT ERRED IN TREATING DEFENDANT-APPELLANT'S SOCIAL SECURITY BENEFITS AS A MARITAL ASSET AND OFFSETTING IT (SIC) AGAINST OTHER MARITAL ASSETS IN ITS DIVISION OF MARITAL PROPERTY ORDER.
 {¶ 7} "III. THE TRIAL COURT ERRED IN DETERMINING THE PRESENT VALUE OF BOTH PARTIES' SOCIAL SECURITY BENEFITS.
 {¶ 8} "IV. THE COURT ERRED IN FINDING THAT THE FIFTH THIRD BANK HOME EQUITY LOAN ON THE PARTIES' PICKERINGTON, OHIO RESIDENCE IS THE SEPARATE LIABILITY OF THE DEFENDANT-APPELLANT.
 {¶ 9} "V. THE COURT ERRED IN ALLOCATING $206,577 TO DEFENDANT-APPELLANT AS MARITAL MONIES ALREADY RECEIVED BY HIM DURING THE COURSE OF THE DIVORCE PROCEEDINGS.
 {¶ 10} "VI. THE COURT ERRED IN NOT ALLOCATING ONE-HALF OF THE BANK ONE DEBT OF $12,000.00, THE AMERICAN EXPRESS DEBT OF $20,000.00, THE BANK OF AMERICA DEBT OF $49,000[.00], THE WELLS FARGO BANK DEBT OF $25,000.00 AND THE BANK ATLANTIC DEBT OF $30,532.56, AS DESCRIBED IN DEFENDANT-APPELLANT'S TRIAL EXHIBIT P, TO EACH PARTY AS MARITAL DEBT.
 {¶ 11} "VII. THE COURT ERRED IN NOT DEDUCTING THE SUM [OF] $33,000.00 FROM PLAINTIFF-APPELLEE'S DIVISION OF MARITAL ASSETS FOR HER ACTIONS IN CAUSING THE LOSS OF THIS AMOUNT OF MONEY IN THE PARTIES' SOUTH TRUST BANK $133,000[.00] CERTIFICATE OF DEPOSIT ACCOUNT.
 {¶ 12} VIII. THE COURT ERRED IN ORDERING DEFENDANT-APPELLANT TO PAY THE SUM OF $20,000 TO PLAINTIFF-APPELLEE FOR PART OF THE ATTORNEY FEES INCURRED BY HER IN THIS ACTION.
 {¶ 13} "IX. THE TRIAL COURT ERRED IN AWARDING A MARITAL PROPERTY DIVISION WHICH IS GROSSLY INEQUITABLE TO THE DEFENDANT-APPELLANT."
 {¶ 14} Because some of the above assigned errors are closely related, we will address several of them in combined fashion.
 I., IV., VII. {¶ 15} In his First Assignment of Error, appellant contends the trial erred in valuing the parties' boat and allocating it to appellant pursuant to the court's marital property "balance sheet." In his Fourth Assignment of Error, appellant argues the trial court erred in apportioning the parties' Fifth Third Bank home equity loan to appellant. In his Seventh Assignment of Error, appellant maintains the trial court erred in failing to account for a $33,000.00 decrease in the parties' South Trust Certificate of Deposit. We disagree on all three counts.
 {¶ 16} The first asset at issue is a 28-foot 1984 Bertram boat, which the court valued at $40,000.00, as marital property allocated to appellant. Findings of Fact and Conclusions of Law at 12. The court made no further specific reference to the boat, but in the conclusions of law stated that "[t]he remaining assets of the parties shall be divided pursuant to the balance sheet which is attached hereto as Exhibit C." Id. at 18. Appellant testified during the divorce trial that he instead desired to have the boat sold and the proceeds divided evenly. Tr. at 284-286. Appellee nonetheless responds, inter alia, that documentation was provided to the court indicating that appellant had listed the boat as a personal asset worth $40,000.00 on a loan application dated June 15, 2003. See Exhibit 3.4.
 {¶ 17} The second disputed asset is the parties' certificate of deposit ("CD") with South Trust Bank. While the divorce action was pending, appellee sought to join South Trust as a party and obtain a restraining order against it to protect the deposited funds from appellant's dissipation. Appellant presently indicates that because of attorney fees and penalties assessed against the account, which were related to South Trust's legal maneuvering and appellee's premature withdrawal of the CD, the account value dropped by $33,000. Appellee presently responds that her actions were justified in light of appellant's lack of trustworthiness during the divorce, and that the funds were withdrawn from the CD pursuant to an agreed judgment entry.
 {¶ 18} Finally, in regard to the home equity loan, we note the prior agreed entry of January 16, 2003, which reads in pertinent part: "Defendant, Ronald H. Dooley, shall be solely responsible for the debts and expenses of ECI [Elsa Cooper Institute], including but not limited to a certain line of credit issued to ECI by Fifth Third Bank and the second mortgage on the marital residence owed to Fifth Third Bank, said funds having been deposited in the accounts of ECI." Despite the clear language of this entry, appellant now contends some of the funds were used to improve the marital home rather than ECI.
 {¶ 19} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Drinkard v.Drinkard, Stark App. No. 2005CA00172, 2006-Ohio-680, ¶ 27, citingCross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Construction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Furthermore, this Court has clearly expressed its reluctance to engage in piecemeal review of individual aspects of a property division taken out of the context of the entire award. See Harper v. Harper (Oct. 11, 1996), Fairfield App. No. 95 CA 56, citing Briganti v. Briganti (1984),9 Ohio St.3d 220, 459 N.E.2d 896.
 {¶ 20} Upon review, we find no reversible error in the valuation and the award/apportionment of the Bertram boat, the South Trust account, and the Fifth Third home equity loan in light of the overall distribution of the parties' assets and debts by the trial court. Appellant's First, Fourth, and Seventh Assignments of Error are overruled.
 II. {¶ 21} In his Second Assignment of Error, appellant argues the trial court erred in its treatment of his social security retirement benefits in distributing marital property. We disagree.
 {¶ 22} It is undisputed that appellant, age sixty-five at the time of the decree, receives monthly social security retirement benefits. The gist of appellant's present argument is a technical challenge to a court's utilization of a retired individual's social security income for purposes of spousal support calculation, where the court also utilizes a valuation of that individual's future social security benefits for purposes of equitably dividing marital property. Appellant equates this to a form of improper "double dipping" by the court. Appellant's Brief at 7. We note that in Neville v. Neville, 99 Ohio St.3d 275,791 N.E.2d 434, 2003-Ohio-3624, syllabus, the Ohio Supreme Court held: "In making an equitable distribution of marital property in a divorce proceeding, a trial court may consider the parties' future Social Security benefits in relation to all marital assets." Appellant provides no authority for his implicit proposition that Neville is inapplicable where one party is already in payout status regarding his or her social security benefits, and where spousal support is also an issue. Even so, such a proposition is obviated under the facts of the case sub judice, because the parties had reached an agreement that neither side would pursue spousal support. See Tr. at 143.
 {¶ 23} Accordingly, appellant's Second Assignment of Error is overruled.
 III. {¶ 24} In his Third Assignment of Error, appellant maintains the trial court erred in valuing the present value of the parties' social security benefits. We disagree.
 {¶ 25} In the case sub judice, each side presented calculations of the parties' social security valuations. Appellee's expert valued appellant's social security at $241,562.00 and appellee's at $99,020.00. Plaintiff's Exhibit 5.5. Appellant's expert valued appellant's social security at $179,174.00 and appellee's at $82,207.00. Exhibit R. The differences appear to stem from differences in the "discount rate" that each expert used in the valuation process. Nonetheless, the parties herein did not object at trial that the respective expert reports would be admitted without supporting testimony. See Tr. at 149, 373. " * * * [W]here there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." Kennard v.Kennard, Delaware App. No. 02CAF11059, 2003-Ohio-2800, ¶ 28, citingHawk v. Hawk, Tuscarawas App. No. 2002AP040024, 2002-Ohio-4384.
 {¶ 26} We find the court's valuation of future social security benefits to be within its discretion in this matter. Appellant's Third Assignment of Error is therefore overruled.
 V. {¶ 27} In his Fifth Assignment of Error, appellant contends the trial court erred in allocating the sum of $206,577.00 in marital property to him in what appellant labels an "early distribution of marital assets." We disagree.
 {¶ 28} The record reveals that on October 1, 2002, appellant withdrew $206,577.25 from the parties' savings account at South Trust Bank. Plaintiff's Exhibit 6.4. At trial, appellant admitted that he still possessed the check for the South Trust withdrawal at the time he received the restraining order. Appellant thereupon deposited the funds in Flagstar Bank in Detroit, Michigan, which was not the subject of a restraining order. Tr. at 310. Testimony at trial revealed that at least some of this money was used for appellant's personal expenses; appellee saw none of it. There was also evidence that appellant invested some of the funds into the Elsa Cooper Institute, one of the businesses appellant had assumed pursuant to a 2003 court order. Trial Exhibits 16-18, 25-27.
 {¶ 29} We therefore find no error or abuse of discretion in the court's decision to allocate the depleted $206,577.00 savings account to appellant's side of the property division balance sheet. Appellant's Fifth Assignment of Error is overruled.
 VI. {¶ 30} In his Sixth Assignment of Error, appellant contends the trial court erred in failing to allocate certain unsecured debts, incurred while the divorce was pending, as marital debts. We disagree.
 {¶ 31} Pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall . . . determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of evidence. Zeefe v. Zeefe (1998),125 Ohio App.3d 600, 614, 709 N.E.2d 208. "Trial court decisions on what is presently separate and marital property are not reversed unless there is a showing of an abuse of discretion." Valentine v. Valentine (Jan. 10, 1996), Ashland App. No. 95COA01120, citing Peck v. Peck (1994)96 Ohio App.3d 731, 734, 645 N.E.2d 1300. In order to find an abuse of that discretion, we must determine the trial court's order was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 32} Appellant asserts that he "submitted uncontested evidence" that the roughly $136,000 in unsecured Bank One, American Express, Bank of America, Wells Fargo, and Bank Atlantic debts in his name were marital debts, and that the trial court failed to address them anywhere in the final decree, the balance sheet, or the findings of fact and conclusions of law. Appellant's Brief at 17.
 {¶ 33} Appellant averred at the commencement of the case that he had no unsecured personal debt. See Financial Disclosure Affidavit, October 30, 2002. This Court has held that in some circumstances, debt incurred during the pendency of a divorce is properly classified as the separate debt of the spouse who incurs it. See Gerencser v. Gerencser (April 19, 1999), Fairfield App. No. 98CA00060. We note R.C. 3105.171(G) mandates that a court ordering a division of property "shall make written findings of fact that support the determination that the marital property has been equitably divided * * *." However, there is no such requirement when a court merely determines that debt incurred during the pendency of the divorce is separate debt, although we think it would be the better practice to make written findings in this regard for the benefit of the parties.
 {¶ 34} Upon review, we find no abuse of discretion in the court's implicit finding that the above-named unsecured debts were the separate liability of appellant. Appellant's Sixth Assignment of Error is overruled.
 VIII. {¶ 35} In his Eighth Assignment of Error, appellant argues the trial court erred in ordering him to pay $20,000.00 toward appellee's attorney fees. We disagree.
 {¶ 36} An award of attorney's fees lies within the sound discretion of the trial court. Rand v. Rand (1985), 18 Ohio St.3d 356, 359,481 N.E.2d 609. R.C. 3105.73(A) reads as follows: "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." Said statute replaces R.C. 3105.18(H), and became effective April 27, 2005, prior to the issuance of the divorce decree in this matter.
 {¶ 37} The trial court found, inter alia, that during the divorce appellant had altered documents to falsify the down payment received via the sale of Technology Education College, lied during deposition about a relationship with a subordinate, violated temporary orders by dissipating funds and changing his life insurance beneficiary, and forged a court order, leading to the withdrawal of his original counsel. Cf. Tyree v. Tyree, Licking App. No. 03 CA 89, 2004-Ohio-3967, ¶ 38
(affirming attorney fee award where the appellant had "complicated matters * * * by squandering marital assets, violating temporary orders, falsely answering questions under oath * * *, and creating a situation where his attorney withdrew from the case for lack of payment.")
 {¶ 38} Upon review, we find the record supports the trial court's above findings, and we are unpersuaded the court abused its discretion in awarding appellee $20,000 in attorney fees under the circumstances of this case.
 {¶ 39} Appellant's Eighth Assignment of Error is overruled.
 IX. {¶ 40} In his Ninth Assignment of Error, appellant contends the court's division of marital property was erroneous and "grossly inequitable." We disagree.
 {¶ 41} An appellate court generally reviews the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. R.C. 3105.171 explains a trial court's obligation when dividing marital property in divorce proceedings as follows: "(C)(1) Except as provided in this division or division (E)(1) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section." See alsoCherry, supra, at 355, 421 N.E.2d 1293.
 {¶ 42} R.C. 3105.171(F) reads as follows:
 {¶ 43} "In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 44} "(1) The duration of the marriage;
 {¶ 45} "(2) The assets and liabilities of the spouses;
 {¶ 46} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 47} "(4) The liquidity of the property to be distributed;
 {¶ 48} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 49} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 50} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 51} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 52} "(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 53} Appellant herein again resorts to challenging individual portions of the property division, namely, whether approximately $69,000 of his Bell Howell 401(K) plan should have been recognized as a marital asset, and the issue of the court's "equalization payment" of $188,150 ordered to be paid by appellant to appellee. As an appellate court, we generally review a trial court's property division in its entirety, rather than examining individual awards in a piece-meal fashion. Espenschied v. Espenschied, Tuscarawas App. No. 2002AP030021, 2002-Ohio-5119, ¶ 19, citing Briganti, supra. In the case sub judice, the trial court issued a detailed nineteen-page judgment entry, with findings of fact and conclusions of law, and incorporated a three-page balance sheet with ninety-six lines itemizing the chief separate property items and marital assets and liabilities. Appellant received the interest in the Chicago condominium, and appellee received the interest in the Hilton Timeshare. The Fort Lauderdale Condominium and the Pickerington, Ohio, marital residence were each ordered sold and the proceeds divided equally. The court also apportioned the parties' three motor vehicles and the Bertram boat, and addressed the parties' eight various retirement accounts, including social security. The Independent Education Corporation, valued at $562,795, went to appellant, while the OIOPT and Quest Education Corporation account, valued at $404,162, went to appellee. All told, business assets of $1,905,076 were divided $1,049,224 to appellant and $666,962 to appellee. In addition, the court divided investment accounts of $136,371 and bank accounts of $470,396, as well as "other assets" of $366,875. After accounting for the two Fifth Third Bank marital liabilities, and ordering a $188,150 equalization payment from appellant to appellee, the court reached an equal property settlement of $1,752,776 (rounded) to each party.
 {¶ 54} Viewing the award in its entirety, we do not find the trial court abused its discretion in dividing the parties' marital property. See Koegel v. Koegel (1982), 69 Ohio St.2d 355, 432 N.E.2d 206
(emphasizing that a trial judge should be given wide latitude in dividing property between the parties). Additionally, we find the trial court sufficiently recorded its analysis and findings to permit proper appellate review. See, e.g., Szerlip v. Szerlip (1998),129 Ohio App.3d 506, 512, 718 N.E.2d 473. We emphasize in conclusion that appellant walked away with an equal distribution in this case, even though R.C. 3105.171(E)(3) could have been applied, which statute directs that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
 {¶ 55} Appellant's Ninth Assignment of Error is overruled.
 {¶ 56} For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Domestic Relations Division, Fairfield County, is hereby affirmed.
By: Wise, P. J., Edwards, J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Fairfield County, Ohio, is affirmed.
Costs to appellant.