DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court, Domestic Relations Division, judgment that terminated the marriage of Joseph Basham, plaintiff below and appellant herein, and Sheela Basham, defendant below and appellee herein.
 {¶ 2} Appellant assigns the following errors for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN HOLDING THAT PLAINTIFF HUSBAND ENGAGED IN FINANCIAL MISCONDUCT PURSUANT TO REVISED CODE SECTION 3105.171(E) SUCH TO NECESSITATE AN EQUITABLE RATHER THAN EQUAL DIVISION OF PROPERTY."
 SECOND ASSIGNMENT OF ERROR: *Page 2 
 "THE FINDINGS OF THE TRIAL COURT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE JUDGMENT OF THE TRIAL COURT IS NOT SUPPORTED BY THE RECORD, SUCH TO CONSTITUTE ARBITRARY, CAPRICIOUS AND UNREASONABLE CONDUCT AND TO REQUIRE REVERSAL OF THE JUDGMENT BELOW."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING APPELLANT IN CONTEMPT; FURTHER, THE TRIAL COURT'S `OPPORTUNITY' TO PURGE THE CONTEMPT BY PAYING THE ATTORNEY FEE AWARD IS A SHAM AND THE TRIAL COURT'S ENTRY DEMONSTRATES THAT THE INEQUITABLE PROPERTY AND DEBT DIVISION IS PART OF THE COURT'S `PUNISHMENT' FOR HIS CONTEMPT."
 FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT'S JUDGMENT IN ITS ENTIRETY IS INEQUITABLE, CONTRARY TO LAW AND AN ABUSE OF DISCRETION."
 {¶ 3} The parties married on June 14, 1980 and have three children.[1] Appellant is a partner in Basham Construction and, by all accounts, has been very successful.[2] Appellee has primarily been a stay-at-home mother who also helped her husband's business by writing checks and keeping financial records. *Page 3 
 {¶ 4} Appellant filed his first divorce petition in September 2004. Several weeks later, he dismissed that action. Appellant commenced the instant action on December 29, 2004 and alleged incompatibility and gross neglect of duty, requested custody of their minor child and requested "his share of the marital assets." Appellee admitted incompatibility, counterclaimed for divorce, and alleged gross neglect of duty, extreme cruelty and adultery. Appellee also requested an equitable division of assets, spousal support and custody of their son.
 {¶ 5} The matter came on for an extensive hearing in January 2006. Both parties stipulated to grounds for divorce and appellant did not contest appellee's designation as the child's residential parent. The bulk of the hearing focused on a series of convoluted real estate and business transactions. No dispute occurred over the marital residence or an apartment building the couple owned. Their home had been lost to foreclosure and the apartment building was in the process of foreclosure because appellant had stopped depositing funds to pay those debts. Also, considerable testimony was adduced concerning the liquidation of other real estate assets, as well as the funneling of monies obtained through a refinance of the marital home into appellant's investments, including "JJ's Convenient Mart" (JJ's) that he co-owns with another individual.[3] *Page 4 
 {¶ 6} The trial court granted the divorce, designated appellee as the minor child's residential parent and awarded appellee $1,000 per month spousal support for eight years. Regarding the property division, the court made lengthy and detailed findings of fact and conclusions of law. The court concluded, inter alia, that appellant had engaged in financial misconduct and that this fact necessitated an equitable distribution of marital property rather than an equal distribution. Thus, the court awarded appellant his entire interest in Basham Construction and awarded appellee all of the JJ's stock. The court also determined that appellant was in contempt of various court orders issued during the course of the proceedings, but held that appellant could purge himself of contempt by paying $13,750 of appellee's attorney fees and $1,100 in litigation costs. This appeal followed.
 I {¶ 7} We first consider, out of order, appellant's fourth assignment of error. Appellant asserts that numerous aspects of the trial court's property awards are either inequitable, contrary to law or constitute an abuse of discretion. We find no merit to those assertions, except for appellant's argument that "no evidence as to the valuation" of the parties property exists.
 {¶ 8} In a divorce proceeding, marital property must generally be divided equally. R.C. 3105.171(C). If, however, an equal property division proves inequitable, a court should divide *Page 5 
the property equitably. Id. To satisfy this statutory mandate, trial courts must determine a value for each piece of marital property. See 1 Sowald Morganstern, Domestic Relations Law (1997) 526, § 12.27.
 {¶ 9} One of the most important marital assets in this case is Basham Construction. Our review of the record reveals no evidence concerning the company's valuation (or partnership interest valuation) and the trial court in the case at bar did not determine a value. Indeed, the court observed in finding of fact number eight that "no appraisal was obtained" for Basham Construction. Without a valuation or a stipulation to the asset's value, it is impossible for us to conduct a meaningful appellate review of the trial court's marital property division.
 {¶ 10} We recognize that the trial court chose to make an unequal property division. After the court found that appellant engaged in financial misconduct under R.C. 3105.171(E), the court, acting within its authority, fashioned an "equitable" property division. However, in order to make an "equitable" division of marital property, courts must first determine the fair market value of each item of marital property. See Eisler v. Eisler (1985), 24 Ohio App.3d 151, 493 N.E.2d 975;Quick v. Stocker, Tuscarawas App. No. 2003AP120093, at ¶ 14; Hyslop v.Hyslop, Wood App. No. WD 01-059, at ¶ 51. Without a valuation of marital property, appellate courts cannot determine whether the disparity in value in an unequal distribution is so great as to actually constitute an inequitable distribution. *Page 6 
 {¶ 11} We also recognize that the parties in the case placed the trial court in a difficult position because neither side produced evidence concerning the company's value. In light of that fact, it is tempting to simply apply a waiver theory and let the parties live with the consequences. Some case authority does indeed support that course of action. See Medley v. Medley (Aug. 31, 1998), Licking App. No. 98CA8;Wright v. Wright (Nov. 10, 1994), Hocking App. No. 94CA02 (Harsha, J., Dissenting). This court, however, has rejected a "waiver" approach when parties fail to adduce evidence of the value of marital assets. SeeCarl v. Carl (Jul. 22, 1999), Ross App. No. 98CA2442; Wylie v.Wylie (Jun. 4, 1996), Lawrence App. No. 95CA18; Wright, supra. We believe that when parties fail to adduce evidence or stipulate to the value of important and substantial marital assets, trial courts should require the parties to do so. See Willis v. Willis (1984),19 Ohio App.3d 45, 48, 482 N.E.2d 1274; Zona v. Zona, Medina App. No. 05CA0007-M, at ¶ 6; Wenger v. Wenger, Medina App. No. 02CA0065, at ¶ 18; Carl, supra. This view is similar to the idea that when fashioning an equitable marital property division, courts should require parties to produce evidence concerning a pension benefit's value, even if the parties themselves failed to do so. See, generally, Bisker v.Bisker 91994), 69 Ohio St.3d 608 N.E.2d 308.
 {¶ 12} In the case at bar, the parties may on remand, in addition to submitting evidence concerning the valuation of Basham Construction, produce additional evidence regarding the *Page 7 
valuation of JJ's. We recognize that the trial court determined that appellant's fifty shares in the company are worth $425,000, presumably from a comment by Robert Ruttman (the current lessee) who stated that JJ's is worth "Eight Hundred and Fifty Thousand probably. (Emphasis added.)[4] Later in his testimony, the following colloquy ensued:
 "Q. Okay. What is the value based on your net income?
 A. The value of that business?
 Q. Yes.
 A. Is worth Four . . . Four Hundred and Fifty Thousand Dollars ($400,000 — 450,000.00).
 Q. Okay. And would you pay Eight Hundred Fifty Thousand Dollars ($850,000) to buy that right now?
 A. No."
 {¶ 13} A trial court's property valuation will not generally be reversed on appeal absent an abuse of discretion. Bunkers v.Bunkers, Wood App. No. WD-06-030, 2007-Ohio-561, at ¶ 34; Cronin v.Cronin, Greene App. Nos. 02-CA-110 03-CA-75, 2005-Ohio-301, at ¶ 11;Green v. Green (Jun. 30, 1998), Ross App. No. 97CA2333. To establish an abuse of discretion, the result must be so violative of fact or logic that it evidences not the exercise of will, but the perversity of will; not the exercise of judgment, but the defiance of judgment; not the exercise of reason, but instead passion or bias. See Nakoff v. FairviewGen. Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1; also seeBragg v. Hatfield, Vinton App. No. 02CA567, 2003-Ohio-1441, ¶ 22. Here, in view of Ruttman's statement that JJ's is "probably" worth *Page 8 
$850,000, we cannot conclude that the trial court abused its discretion by taking half that value and assigning it to appellant's stock interest in the company. However, in light of Ruttman's later admission concerning the value of the business, and in view of the fact that we are remanding this matter for a valuation of other marital assets, the interests of justice will be best served by allowing the parties, if they so desire, to introduce additional evidence concerning JJ's value. Again, in the case sub judice Basham Construction and JJ's appear to be the parties' most substantial assets. Although a professional appraisal is generally the preferred course of action, parties also have the option to either stipulate to an asset's value or to adduce other evidence of value.
 {¶ 14} Accordingly, based upon the foregoing reasons we hereby sustain appellant's fourth assignment of error.
 II {¶ 15} We now consider appellant's first assignment of error regarding the trial court's finding that he engaged in financial misconduct that necessitated an equitable, rather than equal, marital property distribution. See R.C. 3105.171(E).
 {¶ 16} R.C. 3105.171(E)(3) provides "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." A court's finding of financial misconduct should not be reversed *Page 9 
unless it is against the manifest weight of the evidence. SeeBucalo v. Bucalo, Medina App. No. 05CA0011-M, 2005-Ohio-6319, at ¶ 22;Stump v. Stump (Sep. 23, 1994), Athens App. No. 93CA1596. Thus, an appellate court must determine whether the trial court's finding is supported by some competent, credible evidence. Stump, supra.
 {¶ 17} In the case sub judice, the testimony concerning appellant's various business and real estate transactions is difficult to follow and highly confusing. However, the record supports the trial court's decision in this case. Appellee testified that the marital home was refinanced, in part, to satisfy debt owed on the apartment building so that she would own the asset free and clear if anything happened to appellant. That debt was not satisfied, however, and the property was in foreclosure at the time of the hearing. Further, the refinanced mortgage on the marital residence was not satisfied and the parties' home was lost to foreclosure because appellant stopped making payments. Appellee testified that she visited the bank to investigate what her husband did with proceeds from the refinance of their home, and she determined that he used the money to invest in modular homes rather than to satisfy the mortgage. Appellee also testified that her husband rushed her to sell real estate that she owned on State Route 140 around the time of their separation. Only $11,000 of the $41,000 in proceeds from that sale was deposited into their joint account. Appellee stated that the remaining $30,000 was invested in JJ's, which appellant *Page 10 
later attempted to claim as separate property.[5] Appellant testified to various real estate transactions that netted thousands of dollars, but he could not account what happened to those monies other than to pay bills.
 {¶ 18} We acknowledge that appellant denied appellee's assertions that he dissipated marital assets. Appellant also offered explanations for the destination of the proceeds from the various transactions. However, the trial court, as the trier of fact, is in a much better position than this court to observe the demeanor, gestures and voice inflections of each witness and to use those observations to gauge witness credibility and to decide how much weight to give to their testimony.Montgomery v. Montgomery, Scioto App. Nos. 03CA2923 03CA2925,2004-Ohio-6926, at ¶ 25; Jacobs v. Jacobs, Scioto App. No. 02CA2846, 2003-Ohio-3466, at ¶ 31; Taylor v. Taylor (Aug. 4, 1998), Scioto App. No. 97CA2537.
 {¶ 19} In the case sub judice, the trial court obviously did not believe appellant's explanations concerning the sale proceeds, and this is well within the trier of fact's authority.[6] *Page 11 
Moreover, appellee produced evidence that, if believed, established that appellant dissipated marital assets.
 {¶ 20} For these reasons, we find no merit in appellant's first assignment of error and it is hereby overruled.
 III {¶ 21} Appellant's second assignment of error is a generalized argument that "the findings of the trial court are against the manifest weight of the evidence" and are "unsupported by the record below." Appellant does not cite specific instances of error in the record, as required by App.R. 16(A)(7), and we could simply disregard this assignment of error. See App.R. 12(A)(2). However, in the interest of justice we will review the assignment of error and the record.
 {¶ 22} In the instant case the hearing transcript spans over five hundred pages and contains difficult testimony and evidence that is, at times, convoluted and confusing. The trial court had an onerous task to sift through the various business and real estate transactions and it provided a detailed, fifteen page entry that addressed the issues. Other than the issues that we specifically set forth and resolve in this opinion, we disagree with appellant that the trial court's findings are unsupported by the record. To the contrary, the voluminous transcript and evidence fully supports the trial court's conclusion. *Page 12 
 {¶ 23} We, therefore, find no merit in appellant's second assignment of error and it is hereby overruled.
 IV {¶ 24} Appellant's third assignment of error involves the trial court's contempt finding. First, appellant asserts that the trial court erred because no pending motion for contempt existed. However, our review reveals that appellee filed a multi-pronged contempt motion on December 9, 2006.
 {¶ 25} Next, appellant argues that the trial court violated his due process rights because he did not receive notice that the motions would be addressed at the final hearing, nor was he given an opportunity to defend against it. Again, we disagree.
 {¶ 26} Our review of the final pre-trial hearing transcript (December 22, 2005) reveals that the trial court deferred ruling on the contempt motion until the final hearing. That transcript also shows that appellant's counsel was present at that pre-trial hearing. Thus, appellant had sufficient notice that he would have to defend against the contempt motion at the final hearing.
 {¶ 27} Appellant's next argues that the trial court erred by finding him in contempt. Again, we disagree. Appellee's motion set forth three allegations. If the court's decision can be supported under any of those reasons, we will affirm the judgment. Although the motion's third branch alleged that appellant violated the court's order to not diminish the value of the marital assets, the court concluded that the evidence established the fact that appellant did, indeed, lessen the value *Page 13 
of marital assets. Evidence in the record amply supports the trial court's finding in this regard.
 {¶ 28} Moreover, we note that even if we assume for purposes of argument that the trial court's contempt ruling is in error, any such error constituted at most harmless error. The trial court imposed no penalty on appellant, although the court held that appellant could purge his contempt by paying appellee's attorney fees ($13,750) and the costs of litigation ($1,100). However, the trial court had already determined in findings of fact number twenty-six and twenty-seven that such fees and costs are reasonable and that appellant should be liable for them in light of the particular facts and circumstances of this case. R.C.3105.73(A) provides that "[i]n an action for divorce . . . a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." To determine whether an award is equitable, a court may consider, inter alia, conduct of the parties and any other relevant factors the court deems appropriate. Id. An attorney fee award under this statute lies within the sound discretion of the trial court and its decision will not be reversed absent an abuse of discretion. See Dooley v. Dooley, Fairfield App. No. 05CA109, 2006-Ohio-6938, at ¶ 36; Cangemi v. Cangemi, Cuyahoga App. No. 86670, 2006-Ohio-2879, at ¶¶ 28-30; Drinkard v. Drinkard, Stark App. No. 2005CA00172, 2006-Ohio-680, at ¶ 22
 {¶ 29} In the case at bar, the trial court cited two reasons why appellant should pay appellee's attorney fees: (1) his *Page 14 
contempt of the court, and (2) his financial misconduct. See R.C.3105.171(E). Again, we have previously reviewed the financial misconduct claim under appellant's first assignment of error. Appellant's dissipation of marital assets, and his attempt to funnel proceeds from the sale of assets into JJ's, which he in turn claimed to be his separate property, provides a sufficient reason to impose attorney fees. See R.C. 3105.73(A). Thus, even if we assume that the trial court erred by finding appellant in contempt, appellant nevertheless is obligated to pay appellee's attorney fees under another portion of the judgment.
 {¶ 30} Accordingly, we hereby overrule appellant's third assignment of error.
 {¶ 31} In summary, having partially sustained appellant's fourth assignment of error, we hereby affirm in part and reverse in part the trial court's judgment. We remand this matter so that the parties may (1) produce evidence as to the value of Basham Construction (and appellant's partnership interest) and (2) produce additional evidence concerning the value of other material assets.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 JUDGMENT ENTRY *Page 15 
It is ordered the judgment be affirmed in part, reversed in part and the case be remanded for further proceedings consistent with this opinion. Costs herein taxed are to be equally divided by the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment Opinion as to Assignments of Error I, II III and Concurs in Judgment Only as to Assignment of Error IV;
Kline, J.: Concurs in Judgment Opinion as to Assignments of Error I, II, III and in part of IV and Dissents in part with opinion as to Assignment of Error IV
[1] At the time of the court proceedings, two children had become emancipated. Only Daniel (d/o/b 12-28-89) lives at home.
[2] The company is alternately referred to in the record as "Basham Contracting" or "Basham Construction." Although the company was referred to as a partnership, the tax returns admitted into evidence contain neither federal form 1065 (reporting partnership income) nor schedule K-1 (reporting an individual partner's distributive share of partnership income). To the contrary, the tax returns all include schedule Cs that denote the company as a sole proprietorship. Nevertheless, because the parties referred to the business as a "partnership," we will do the same.
[3] The record indicates that appellant owns fifty shares in "JJ's," a limited liability company (LLC). Both parties expended considerable time arguing over a "de facto" marriage termination date because appellant claimed that appellee is not entitled to any share of that company because it began after the marriage had essentially ended.
[4] No other evidence of JJ s valuation appears in the record and this is the testimony on which appellee apparently relied in her post-trial brief.
[5] Tammy Skaggs, who apparently purchased the State Route 140 property from appellee, testified that appellant commented to her at the closing that he was in a "hurry" to sell the land because he needed the proceeds for the "convenience store."
[6] The trial court may have been influenced by evidence of appellant's business reputation when it weighed his credibility. Steve VanHoose testified that he sold property to appellant, but insisted on being paid in cash because he was "skeptical about [appellant] and his businesses." Even appellant admitted that he had been involved in conflicts with people "over money and [business] dealings" in the past. Appellant also admitted that (1) he provided inaccurate information concerning his wife's income and loan application and (2) he did not declare some of his business "side deals" as income for income tax purposes. *Page 1