[Cite as *Machesky v. Machesky*, 2011-Ohio-862.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

FRANK R. MACHESKY, JR., :
:
  Plaintiff-Appellant, : Case No: 10CA3172
:
v. :
: <u>DECISION AND</u>
SHARI L. MACHESKY, : <u>JUDGMENT ENTRY</u>
:
  Defendant-Appellee. : File-stamped date: 2-23-11

---

<u>APPEARANCES:</u>

Justin W. Skaggs, Skaggs Law Office, Jackson, Ohio, for Appellant.

Richard W. Clagg; Ater, Schmidt & Wissler, LLP; Chillicothe, Ohio, for Appellee.

---

Kline, J.:

**{¶1}**   Frank R. Machesky, Jr. (hereinafter "Frank"), appeals the judgment of the Ross County Court of Common Pleas, which granted him a divorce from Shari L. Machesky (hereinafter "Shari"). On appeal, Frank argues against the trial court's distribution of the marital debt. The trial court did not place values on either Shari's Kohl's card debt or her Elder Beerman card debt. And for that reason, Frank contends that the trial court could not have complied with R.C. 3105.171(B). We, however, find no merit in Frank's argument. Because Frank did not testify as to the values of these debts, he has waived any error related to the valuations of the Kohl's and Elder Beerman cards. Furthermore, because the trial court distributed the marital debt in a manner consistent with Frank's objections to the magistrate's decision, he invited any

potential error.  Next, Frank contends that the trial court's award of spousal support is unreasonable and excessive.  Because Frank cannot demonstrate that the spousal-support award is unreasonably high, and because the R.C. 3105.18(C)(1) factors support the award, we cannot find that the trial court abused its discretion.  Accordingly, we overrule Frank's assignments of error and affirm the judgment of the trial court.

I.

**{¶2}**     Frank and Shari were married on August 13, 1988.  On October 6, 2006, Frank filed a complaint for divorce.

**{¶3}**     Frank has a bachelor's degree in chemistry and works as a senior chemist. In 2007, Frank earned $78,259.26 in gross wages.  Shari has a high school diploma and works as a server in a restaurant.  In 2007, Shari earned gross wages of $10,887.32.

**{¶4}**     The magistrate held a final divorce hearing on January 28, 2008.  Prior to the hearing, Frank and Shari had resolved all issues except for spousal support, child support, and the division of the marital debt.  (For example, the parties agreed that Frank would keep the marital real property.)  Thus, at the hearing, Frank and Shari testified as to their respective incomes and the various marital debts.  Neither Frank nor Shari, however, testified as to the amount of debt on either Shari's Kohl's card or her Elder Beerman card (both of which, Frank had been paying).

**{¶5}**     On February 14, 2008, the magistrate issued his decision.  The magistrate recommended that Frank pay $531.24 per month in child support.  Additionally, the magistrate recommended that Frank pay the following debts: the Chase credit card ($10,241.96); a Bank of America debt ($11,928.70); the Discover credit card ($5,118); a

second Bank of America debt ($30,781.52); the Atomic Employees' Credit Union debt ($500); the Kohl's card debt (no value assigned); the Elder Beerman card debt (no value assigned); both mortgages on the marital real property; and the monthly car payments. Finally, the magistrate (1) imputed $18,720 in income to Shari for child support and spousal support purposes and (2) recommended that spousal support was not "reasonable or appropriate."

{¶6} Both Frank and Shari filed objections to the magistrate's decision. Frank objected to having to pay Shari's Kohl's card debt, her Elder Beerman card debt, and her automobile-related expenses. And Shari objected to (1) her $18,720 in imputed income and (2) the finding that spousal support was not reasonable or appropriate.

{¶7} On June 10, 2010, the trial court entered its decree of divorce. In relevant part, the trial court ordered Shari to pay the Kohl's card debt, the Elder Beerman card debt, and her own monthly car payment. The trial court did not, however, assign values to any of these debts. Additionally, the trial court found the following: "Spousal Support is appropriate given the duration of marriage, earning abilities and education of the parties, and other factors set forth in Ohio Revised Code [Section] 3105.18. [Frank] shall pay to [Shari], effective the date of this decree, as and for spousal support, the sum of $750.00 per month, for a period of forty-eight (48) consecutive months." Decree of Divorce at 6. And finally, the trial court ordered Frank to pay $524.86 per month in child support.

{¶8} Frank appeals and asserts the following two assignments of error: I. "THE TRIAL COURT ERRED BY FAILING TO SUFFICIENTLY EXPLAIN ITS REASONING FOR AWARDING DEFENDANT-APPELLEE SPOUSAL SUPPORT SO THAT THE

REVIEWING COURT CAN DETERMINE THAT SUCH AWARD COMPLIES WITH LAW." And, II. "THE TRIAL COURT'S AWARD OF SPOUSAL SUPPORT WAS UNREASONABLE, EXCESSIVE, AND AN ABUSE OF DISCRETION."

II.

**{¶9}** In his first assignment of error, Frank argues against the trial court's division of the marital debt. Here, the trial court did not place monetary values on either the Kohl's card debt or the Elder Beerman card debt. And because there is no evidence as to the amount of debt on either of these cards, Frank contends that the trial court could not have complied with R.C. 3105.171(B), which, in turn, tainted the court's review of a necessary factor when it calculated spousal support. See R.C. 3105.18(C)(1)(i).

**{¶10}** "Trial courts must divide marital property equitably between the spouses. R.C. 3105.171(B). In most cases, this requires that marital property be divided equally. Id. at (C)(1). However, if the trial court determines that an equal division would produce an inequitable result, it must divide the property in a way it deems equitable. Id." *O'Rourke v. O'Rourke*, Scioto App. No. 08CA3253, 2010-Ohio-1243, at ¶15. Furthermore, "[a] trial court must take into account marital debt when dividing marital property." *Smith v. Emery-Smith*, Geauga App. No. 2009-G-2941, 2010-Ohio-5302, at ¶45 (internal quotation omitted). Therefore, under R.C. 3105.171(C)(1), marital debt should also be divided equally unless such a division would be inequitable. See *Beamer v. Beamer*, Warren App. No. CA2009-08-107, 2010-Ohio-3143, at ¶13; *Elliott v. Elliott*, Ross App. No. 05CA2823, 2005-Ohio-5405, at ¶16 ("[A]n equitable division of marital property necessarily implicates an equitable division of marital debt.") (citations omitted). "Because the trial court possesses great discretion in reaching an equitable

distribution, we will not reverse its ultimate division of property [or debt] absent an abuse of discretion." *O'Rourke* at ¶15 (citations omitted). An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶11}** Frank argues that the trial court could not have equitably divided the marital debt without first placing values on the Kohl's card debt and the Elder Beerman card debt. In considering Frank's argument, we acknowledge the following principle: "Before the court makes a distribution of property, it must determine the value of the parties' marital assets. * * * Although the court has discretion in assessing a value to the parties' property, it has no discretion to omit valuation altogether." *King v. King* (Mar. 20, 2000), Adams App. No. 99 CA 680, citing *Willis v. Willis* (1984), 19 Ohio App.3d 45, 48 (other citations omitted). See, also, *O'Rourke* at ¶16 ("[B]efore a court can distribute property, the court must value it. Indeed, a trial court must place a monetary value on every contested asset of the parties in a divorce proceeding.") (citations omitted). Here, we believe that the same principle should apply to marital debt. This is so because trial courts distribute marital property and marital debt under the same statute – R.C. 3105.171(C)(1). And if trial courts must place monetary values on marital property, they should also have to place monetary values on marital debt.

**{¶12}** Nevertheless, we disagree with the crux of Frank's argument. Frank did not present evidence as to the value of the Kohl's card debt or the Elder Beerman card debt. And here, we believe that, "if a party fails to present sufficient evidence of valuation, that party has presumptively waived the right to appeal the distribution of

those assets [or debts] because the trial court can only make decisions based on the evidence presented[.]"  *Roberts v. Roberts*, Franklin App. No. 08AP-27, 2008-Ohio-6121, at ¶22, citing *Hruby v. Hruby* (June 11, 1997), Columbiana App. No. 93-C-9.  See, also, *Davis v. Davis*, Cuyahoga App. No. 82343, 2003-Ohio-4657, at ¶18; *Walls v. Walls* (May 4, 1995), Highland App. No. 94 CA 849 (Grey, J., with one judge concurring in judgment only); *Wright v. Wright* (Nov. 10, 1994), Hocking App. No. 94CA02 (Harsha, J., concurring), overruled on other grounds.  But, see, *Brown v. Brown*, Madison App. No. CA2008-08-021, 2009-Ohio-2204, at ¶11 ("A trial court commits reversible error if it makes a division of marital property and was not presented with any evidence of valuation of marital property and where it failed to assign a value in its decree."); *Basham v. Basham*, Scioto App. No. 06CA3085, 2007-Ohio-3941, at ¶11 ("[W]hen parties fail to adduce evidence or stipulate to the value of important and substantial marital assets, trial courts should require the parties to do so.") (Abele, J., with one judge concurring in judgment only and one judge concurring in part, dissenting in part).  We have considered the competing approaches in *Roberts* and *Brown*, and we find that the waiver approach is more appropriate to the present case.  See, generally, *Roberts* at ¶17-24 (discussing the appropriateness of the waiver approach).  In other words, the trial court did not abuse its discretion by deciding the case based on the evidence presented – even if there was no evidence related to the amount of debt on the Kohl's and Elder Beerman cards.  See *Hruby* ("[I]f the trial court required the parties to submit further evidence on the issue of valuation, the court would be interfering with the parties' right to try their own case."), citing *Walls*.

**{¶13}** Because Frank had been paying off the Kohl's and Elder Beerman cards, he could have presented evidence as to the amount of debt on these accounts. But he failed to do so. As the *Roberts* court explained, "Given the parties' total failure to give any present values to the property divided between them, any resultant error was due to the parties' failure to provide sufficient evidence for the court to use in determining an equitable distribution." *Roberts* at ¶24. For similar reasons, Frank has waived any error resulting from the trial court not assigning specific values to the Kohl's and Elder Beerman cards. And based on the lack of evidence related to these debts, Frank can only speculate that the trial court may not have equitably divided the marital debt. He cannot, however, "point to any evidence demonstrating that the court's division was anything other than equitable." Id.

**{¶14}** Furthermore, Frank has invited any error related to the distribution of the marital debt. In his objections to the magistrate's decision, Frank argued that he "never agreed to assume [Shari's] personal debts, such as * * * her Kohl's credit card or the Elder Beerman account." And based on this objection, the trial court ordered Shari to pay these particular debts. Therefore, the trial court divided the marital debt in a manner consistent with Frank's objections to the magistrate's decision. He cannot now complain that the trial court agreed with his objections. See *Melvin v. Martin*, Lawrence App. No. 05CA44, 2006-Ohio-5473, at ¶12-13 (applying the invited-error doctrine).

**{¶15}** Accordingly, we overrule Frank's first assignment of error.

III.

{¶16}     In his second assignment of error, Frank contends that the trial court erred in awarding Shari $750 per month for four years in spousal support.  Essentially, Frank contends that the award is too high and, therefore, unreasonable.

{¶17}     "A trial court has broad discretion in establishing and modifying a spousal support award." *Cassidy v. Cassidy*, Pike App. No. 03CA721, 2005-Ohio-3199, at ¶27, citing *Schultz v. Schultz* (1996), 110 Ohio App.3d 715, 724.  See, also, *Addington v. Addington*, Scioto App. No. 05CA3034, 2006-Ohio-4871, at ¶8.  "Thus, we will not reverse a spousal support award absent an abuse of discretion." *Cassidy* at ¶27.

{¶18}     "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors: (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The

time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable."  R.C. 3105.18(C)(1)(a)-(n).

**{¶19}**     "When making an award, the trial court must consider all of the factors under R.C. 3105.18(C), and must not base its determination upon any one of the factors taken in isolation."  *Brown v. Brown*, Pike App. No. 02CA689, 2003-Ohio-304, at ¶10, citing *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, paragraph one of the syllabus. Furthermore, "[t]he trial court must indicate the basis for its spousal support award in sufficient detail to enable us to determine that 'the award is fair, equitable and in accordance with the law.'"  *Brown*, 2003-Ohio-304, at ¶10, quoting *Kaechele* at paragraph two of the syllabus.

**{¶20}**     Here, we find that the trial court did not abuse its discretion.  Frank contends that the spousal support award is too high, especially in light of (1) the distribution of the marital debt and (2) his other court-ordered payments.  See R.C. 3105.18(C)(1)(a)&(i). To support his argument, Frank cites *Hesseling v. Hesseling*, Ross App. No. 08CA3034, 2009-Ohio-3116.  In *Hesseling*, the husband's annual gross income was $85,517, and his court-ordered payments totaled $5,384 per month.  Id. at ¶25.  As we explained in *Hesseling*, "The court ordered payments are 76% of Mr. Hesseling's monthly gross (pretax) income.  And this does not take into account his monthly personal expenses,

which total over $2,000 when we include his credit card debt and school loans in addition to living expenses. * * * In essence, the court has ordered him to pay out more than he takes in.  In the absence of any evidence to show that he is voluntarily 'under-employed' or that he is solely responsible for the couple's unrealistic lifestyle, this is unreasonable."  Id. at ¶26-27.  For these reasons, we overturned the trial court's spousal-support award.

**{¶21}**     Essentially, Frank contends that the present case is similar to *Hesseling*.  But after reviewing the record, we find *Hesseling* to be distinguishable.  Here, we find that Frank's court-ordered payments are not as onerous as the court-ordered payments in *Hesseling*.  Frank's 2007 gross income was $78,259.26, and, in his brief, Frank lists his various financial obligations.  Frank's spousal support ($750) and child support ($524.86) payments equal $1,274.86 per month.  Furthermore, Frank must pay $1,604 per month in mortgage payments and $1,080 per month in other marital-debt-related payments.  (We have taken these figures from Frank's own trial brief.)  These payments equal $3,958.86 per month – or, put another way, 60.7% of his monthly gross income.  The husband in *Hesseling*, however, had 76% of his monthly gross income consumed by court-ordered payments.  Id. at ¶26.  Furthermore, taking all of Frank's monthly living expenses into account, he claims total monthly expenditures of $5,963.86.  (Again, we took Frank's monthly living expenses from his own trial brief.  Frank has asked us to take "judicial notice" of some additional monthly expenses.  However, because the record contains no evidence of these additional expenses, we have not considered them in resolving Frank's second assignment of error.)  In this instance, the trial court did not have to accept Frank's own assessment of his monthly living expenses.  See,

generally, *Avery v. Avery*, Greene App. No. 2001-CA-100, 2002-Ohio-1188 ("In deciding an appropriate amount of spousal support, trial courts do not have to accept a party's estimate of expenses, particularly where supporting documents are not provided."). Regardless, $5,963.86 is less than Frank's gross monthly income of $6,521.61. In contrast, the husband in *Hesseling* had total monthly expenditures that were greater than his monthly gross income. *Hesseling* at ¶26. Additionally, the property allocation in the present case is substantially different than the property allocation in *Hesseling*. The husband in *Hesseling* "receiv[ed] assets with a negative value of approximately $54,000." Id. at ¶27. But here, Frank cannot demonstrate that he received any assets with a negative value.

**{¶22}** For the foregoing reasons, we find *Hesseling* to be distinguishable from the present case, and Frank cannot rely on *Hesseling* to demonstrate that the spousal-support award is unreasonably high.

**{¶23}** Moreover, as we recognized in *Hesseling*, "simply because the combined effects of the property allocation * * * and the support awards result in a short-term negative cash flow does not make the spousal support award unreasonable per se. In situations where the parties live far beyond their means, the economic reality induced by divorce will often dictate such a result." Id. at ¶24. Here, the amount of unsecured debt demonstrates that Frank and Shari may have lived beyond their means. And unquestionably, the divorce has resulted in dramatic changes to Shari's lifestyle. She is moving from the marital home to an apartment, and she has far less earning power than Frank does. Thus, it is not unreasonable to expect that Frank may also have to adjust his lifestyle under the terms of the divorce. See R.C. 3105.18(C)(1)(g).

**{¶24}** Finally, many of the R.C. 3105.18(C)(1) factors support the trial court's spousal-support award. First, Frank has a much greater earning ability than Shari. Even after subtracting his spousal-support-and-child-support payments, Frank earns $62,960.94 in gross income per year (based on his 2007 earnings). In contrast, Shari works as a restaurant server and, after adding the spousal-support-and-child-support payments, earns far less than that (even with $18,720 in imputed income, $34,018.32 per year). See R.C. 3105.18(C)(1)(b). Second, because he has a college degree in a specialized field, Frank has received more education than Shari has. See R.C. 3105.18(C)(1)(h). And third, because Frank and Shari were married for nearly twenty years, the marriage was of a long duration. See R.C. 3105.18(C)(1)(e). In contrast, Frank bases his entire argument on the spousal-support award being too high and, therefore, unreasonable. As we noted above, Frank has not demonstrated that the spousal-support payments are unreasonably high. Furthermore, we are mindful of our standard of review. Under the abuse-of-discretion standard, "a reviewing court may not merely substitute its judgment for that of the trial court." *Melvin* at ¶7, citing *In re Jane Doe I* (1991), 57 Ohio St.3d 135, 137-138. Thus, after considering all of the R.C. 3105.18(C)(1) factors, we cannot find that the trial court abused its discretion as to spousal support.

**{¶25}** Accordingly, we overrule Frank's second assignment of error. Having overruled both of his assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Harsha, P.J.:  Concurs in Judgment and Opinion.
Abele, J.:  Concurs in Judgment and Opinion as to Assignment of Error II;
          Concurs in Judgment Only as to Assignment of Error I.

For the Court

BY:_____
     Roger L. Kline, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**