# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

JOHN JAMES MONROE,

Plaintiff-Appellee,

v.

KIMBERLY ANN MONROE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 CO 0035**

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations Division
of Columbiana County, Ohio
Case No. 2020 DR 393

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Matthew C. Giannini*, 1040 South Commons Place, Suite 200, Youngstown, Ohio 44514, for Plaintiff-Appellee and

Kimberly Ann Monroe, *Pro se*, 180 Ohio Avenue, Unit #1, Salem, Ohio 44460, Defendant-Appellant.

Dated: September 15, 2023

**HANNI, J.**

**{¶1}** Defendant-Appellant, Kimberly Ann Monroe, appeals from a Columbiana County Common Pleas Court, Domestic Relations Division, decision overruling her objections to the magistrate's decision and granting a divorce to her and Plaintiff-Appellee, John James Monroe.

**{¶2}** The parties were married on May 8, 2014. No children were born as issue of the marriage. They separated on May 1, 2019. Appellant moved into a condo owned by a friend and Appellee remained in the marital home for a brief time. By agreement, the parties then sold the marital home. Prior to selling the house, many issues with the house were remedied including replacing subflooring, repairing drywall, and fixing electrical and plumbing issues. After paying off the mortgage and fees associated with the sale, the parties received $60,862.97 from the sale.

**{¶3}** Appellee filed a complaint for divorce on September 24, 2020. The matter proceeded to a trial before a magistrate.

**{¶4}** The magistrate found the parties were incompatible and granted a divorce. Relevant to this appeal, the magistrate found that Charlene Monroe, Appellee's mother, had loaned the parties $19,500 for a down payment on the marital home. The magistrate ordered that from the proceeds of the sale of the house, the first $27,638 was to be paid to contractor John Smrek, who completed the repairs to house but had yet to be paid. The next $19,500 was to be paid to Charlene Monroe. The next $2,998 was to be paid to Appellant's friend, Joe Armeni, as the parties agreed they owed him for various appliances and some medical bills he had paid for them. The magistrate ordered the remainder of the proceeds to be split equally between the parties.

**{¶5}** The trial court entered judgment that same day entering a decree of divorce in accordance with the magistrate's decision.

**{¶6}** Appellant, however, filed objections to the magistrate's decision. Although represented by counsel throughout the proceedings, Appellant filed her objections pro se. Appellant objected to: (1) the award of $27,638 to Smrek (claiming it should have been less); (2) the award of $19,500 to Appellee's mother (claiming the money had been a gift);

and (3) the award of $2,998 to Armeni (claiming it should have been more). Appellee filed a response in opposition to the objections. Appellant then filed a reply in support of her objections. To this reply, Appellant attached numerous documents and receipts, which she claimed supported her objections.

**{¶7}** The trial court overruled Appellant's objections. It noted that none of the documents Appellant attached to the reply were part of the record and, therefore, the court could not consider them. The court pointed out that the majority of the marital assets were the profits that resulted from the sale of the marital home. And it noted that after the marital debts were paid, the court divided the remainder equally between the parties. The court then adopted the magistrate's decision.

**{¶8}** Appellant filed a timely notice of appeal on September 16, 2022. Still proceeding pro se, Appellant now raises four assignments of error for our review.

**{¶9}** Appellant's assignments of error deal with various marital debts and weight of the evidence issues.

**{¶10}** An appellate court reviews matters involving property division in domestic relations cases for abuse of discretion. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218, 450 N.E.2d 1140 (1983). An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. *Id*. at 219.

**{¶11}** Marital debt is any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose. *Ketchum v. Ketchum*, 7th Dist. Columbiana No. 01 CO 60, 2003-Ohio-2559, ¶ 47, citing Turner, *Equitable Distribution of Property* (2 Ed.1994, Supp.2002) 455, Section 6.29. Debts the parties incur during the marriage are presumed to be marital unless it is proved that they are not. *Vergitz v. Vergitz*, 7th Dist. Jefferson No. 05 JE 52, 2007-Ohio-1395, ¶ 12, citing *Knox v. Knox*, 7th Dist. Jefferson No. 04 JE 24, 2006-Ohio-1154, ¶ 25-26.

**{¶12}** Judgments supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus (1978). See, also, *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226, 638 N.E.2d 533 (1994). Reviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and finding of facts. *Gerijo*, 70 Ohio St.3d at 226

(citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 [1984]). In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. *Id.* In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *Kalain v. Smith*, 25 Ohio St.3d 157, 162, 495 N.E.2d 572 (1986). "A finding of an error of law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal*, 10 Ohio St.3d at 81.

{¶13} It is with these standards in mind that we now turn to Appellant's assignments of error.

{¶14} Appellant's first assignment of error states:

THE TRIAL COURT ERRED IN ITS DISCRETION WHEN IT AWARDED JOHN SMREK, THE CONTRACTOR $27,638.00, ON THE BASIS OF A WRITTEN "PROPOSAL" ONLY AND WITH NO SUPPORTING EVIDENCE OF TIME OR MATERIALS OR THE REASONABLENESS THEREOF. IN THE TRIAL COURT'S FINIDINGS OF FACTS, THE TRIAL COURT MAKES REFERENCE TO THE "PROPOSAL" **EXHIBIT 5**, AND THAT THE CONTRACTOR TESTIFIED THAT HE SPENT 25 TO 30 DAYS WORKING ON THE HOUSE? [sic]

{¶15} Plaintiff's Exhibit 5 is titled a "Proposal." It states it was submitted to Appellee and it was signed by Smrek. It is an estimate for labor and materials for improvements to the marital home. It includes replacing, repairing/installing subfloors; repairing the front door; installing a new window; replacing water-damaged drywall; replacing a toilet; repairing the porch railing; rebuilding the back porch; repairing/replacing bathroom tile; and repairing wiring. It provides a cost of $27,638 to be paid 30 days after closing on the house.

{¶16} Appellant argues the evidence does not support the trial court's award of $27,638 to Smrek. She asserts the court should not have relied on Plaintiff's Exhibit 5 because it is not dated, it does not include her name, it is not signed by Appellee, and it does not include a breakdown regarding labor and materials. Appellant also contends that Smrek's testimony was inconsistent and unreliable.

Case No. 22 CO 0035

{¶17} The parties in this case do not dispute that the improvements to the marital house resulted in a marital debt. Appellant's argument instead focuses on the amount of the debt. The testimony regarding the money owed to contractor John Smrek was as follows.

{¶18} The parties purchased the house in 2014 for $67,000-$70,000. (Tr. 50, 111). They sold the house in 2020 for $120,000. (Tr. 48).

{¶19} Appellee testified that prior to listing the house for sale, the parties hired Smrek to complete renovations to the house. (Tr. 135). The work performed by Smrek included repairing/installing subfloors; repairing the front door; installing a new window; replacing water-damaged drywall; replacing a toilet; repairing the porch railing; rebuilding the back porch; repairing/replacing bathroom tile; and repairing wiring. (Tr. 135; Plaintiff's Ex. 5). Appellee stated that Smrek worked on the house for approximately 15-20 days and his bill totaled $27,638. (Tr. 136).

{¶20} Smrek agreed with Appellee on the work he performed on the parties' house. (Tr.158; Plaintiff's Ex. 5). He also agreed that the parties owed him a total of $27,683, which they were to pay him after they sold the house. (Tr. 159). The only discrepancy was that Smrek stated he spent 25 to 30 days on the project. (Tr. 159).

{¶21} Appellant acknowledged that the house required renovations before the parties could list it for sale. (Tr. 49). She agreed that Smrek should be paid for the work on the house. (Tr. 77). And she agreed that the house increased in value by approximately $50,000 from 2014, when the parties purchased it, to 2020 after the renovations were complete and the parties sold it. (Tr. 48-50).

{¶22} This evidence supports the trial court's decision. The parties agreed that Smrek had yet to be paid for the work that he completed and that he should be paid. Both Appellee and Smrek testified that Plaintiff's Exhibit 5 was accurate. Appellant did not dispute the facts that renovations had been completed, the value of the house had increased, and Smrek remained unpaid for his work. And while Appellant contends the amount the trial court found owing to Smrek is too high, she does not point to any evidence of what she asserts the correct amount owed should be. In sum, there is no indication that the trial court acted unreasonably, arbitrarily, or unconscionably in finding that the parties owed Smrek $27,638 for the renovations to the marital home.

{¶23} Accordingly, Appellant's first assignment of error is without merit and is overruled.

{¶24} Appellant's second assignment of error states:

FURTHER, THE TRIAL COURT ERRED IN ITS DISCRETION IN THE AWARD FROM THE PROCEEDS OF THE MARITAL PROPERTY TO JOHN MONROE'S MOTHER, CHARLENE MONROE, IN THE AMOUNT OF $19,500.00 FOR THE MONEY GIVEN TO THE PARTIES TO PURCHASE THE MARITAL RESIDENCE WITH NO DOCUMENTS TO SUPPORT THAT THE FUNDS GIVEN WERE A LOAN.

{¶25} Here, Appellant claims the trial court erred in finding that Appellee's mother loaned the parties $19,500 towards the purchase of the marital home. She claims she knew nothing of this loan and notes there are no documents to prove that the money was not a gift.

{¶26} Appellee testified his parents sold a car for $19,500, the proceeds of which the parties used as a down payment on the marital home. (Tr. 111-113). Appellee stated that he and Appellant discussed the matter at the time. (Tr. 113, 177). In support, Appellee introduced Plaintiff's Exhibit 3, which was a copy of a check dated June 25, 2014 in the amount of $19,500 made payable to him from his mother. (Tr. 112). Appellee testified it was his understanding that they would pay the money back either when they sold the house or when they otherwise had the money. (Tr. 178). He stated Appellant was aware that the money was a loan. (Tr. 178).

{¶27} Appellant acknowledged that Appellee's parents had "helped" them financially. (Tr. 26). She believed that Appellee's parents had "helped" them for a sum of $20,000 to $30,000. (Tr. 26). But she stated she did not specifically recall receiving $19,500 from Appellee's parents. (Tr. 29). Appellant also testified that she did not remember how much money the parties borrowed to purchase the marital home. (Tr. 30-31).

{¶28} Appellee's mother, Charlene Monroe, testified that she sold a car and the parties used the proceeds of the sale for the down payment on their house. (Tr. 147). She identified the check she issued to Appellee in the amount of $19,500. (Tr. 147;

Plaintiff's Ex. 3). Charlene testified that the money was a loan. (Tr. 149). But she admitted that she did not execute any loan documents. (Tr. 150).

{¶29} This issue turns on credibility of the witnesses. The trier of fact occupies the best position to watch the witnesses and observe their demeanor, gestures, and voice inflections and to utilize these observations in weighing credibility. *Seasons Coal Co., Inc.*, 10 Ohio St.3d at 80. Here, the magistrate was in the best position to observe Appellant's, Appellee's, and Charlene's testimony. The magistrate found Appellee's and Charlene's testimony that the $19,500 was a loan to be more credible than Appellant's testimony that she was uncertain that Charlene had loaned the parties any money. And Appellee submitted a copy of the check from Charlene to him documenting the $19,500. Competent, credible evidence exists on the record to support the magistrate's/trial court's finding. As an appellate court, we are not in a position to second-guess the magistrate's credibility determination. Thus, the trial court did not abuse its discretion in determining that $19,500 from the proceeds of the house sale were owed to Charlene.

{¶30} Accordingly, Appellant's second assignment of error is without merit and is overruled.

{¶31} Appellant's third assignment of error states:

FURTHER, THE TRIAL COURT ERRED IN IT'S [sic] DISCRETION TO AWARD ONLY $2,998.00 TO JOE ARMENI FOR MONIES PAID BY HIM FOR THE PARTIES. THE TRIAL COURT IN THE FINDINGS OF FACTS MAKES REFERENCE TO APPELLEE'S **EXHIBIT 4** ONLY, WHEN APPELLANT'S **EXHIBIT P** SHOULD HAVE BEEN TAKEN INTO CONSIDERATION ALSO? [sic]

{¶32} In this assignment of error, Appellant argues the court should have awarded her friend, Joe Armeni, more than $2,998. She claims Armeni paid for various expenses for the parties including veterinary bills and legal fees. She asserts her claim is supported by Defendant's Exhibit P.

{¶33} Armeni is a close friend of Appellant. She testified that their relationship is platonic and that Armeni is like a father figure to her. (Tr. 18, 280). Since the time the parties separated, Appellant has given Armeni power of attorney to manage her finances.

(Tr. 281). Additionally, Armeni owns the condo where Appellant currently resides. (Tr. 11).

**{¶34}** Exhibit P is a list Armeni compiled of all of the money he contended that the parties owe him. The items on the list total approximately $16,000.

**{¶35}** The parties were married on May 8, 2014. They separated on May 1, 2019. Many of the items either pre-date the marriage, were incurred after the parties separated, or are not identified by date. Armeni admitted as much. And Armeni did not provide receipts for any items.

**{¶36}** Armeni testified definitively that several of the items listed on Exhibit P pre-dated the marriage: $300 for bail on February 22, 2013; $3,000 for Attorney Williams; $780 for court costs; $1,500 for Attorney Benvenuto. (Tr. 343-347). He testified that $1,250 for Attorney Macala dealt with Appellant's child support in a case not involving Appellee. (Tr. 321, 346-347). He testified that $1,600 for rent was incurred after the parties separated. (Tr. 348). He could not say when the $297 for eyeglasses was incurred. (Tr. 348-349). He could not say when the $134 for water bills was incurred. (Tr. 327). Per Defendant's Exhibit P, $221 for medical bills was incurred after the parties separated.

**{¶37}** Appellee admitted that the parties owed Armeni for certain items listed on Defendant's Exhibit P. He stated that the parties owed Armeni: $1,000 for a refrigerator; $604 for fencing; $250 for a microwave; $250 for a washing machine; $673 for medical bills; and $221 for medical bills. (Tr. 128-129; Defendant's Ex. P). He also included these items on a list he compiled of what he considered marital debt. (Plaintiff's Ex. 4). These items totaled $2,998, which is the amount the court ordered paid to Armeni from the proceeds of the sale of the parties' house.

**{¶38}** The trial court did not abuse its discretion in determining that Armeni was owed $2,998 by the parties. Both parties and Armeni agreed these debts were owed. The rest of the items on the list prepared by Armeni either predated the marriage, were incurred after the parties' separation, or it could not be established with any certainty when the debts were incurred.

**{¶39}** As was the case in the previous assignment of error, this is a matter of witness credibility. The magistrate listened to Armeni describe the items he believed the

parties owed him for. The magistrate also heard Appellant's and Appellee's testimony on these matters. And the magistrate and the trial court examined Defendant's Exhibit P. Because there is competent, credible evidence to support the trial court's decision and because we must defer to the magistrate/trial court on matters of witness credibility, we cannot conclude the trial court abused its discretion in finding that the parties owed Armeni the sum of $2,998.

{¶40} Accordingly, Appellant's third assignment of error is without merit and is overruled.

{¶41} Appellant's fourth assignment of error states:

FINALLY, THE TRIAL COURT ERRED IN IT'S [sic] DISCRETION WHEN IT DID NOT ADDRESS THE FUNDS THAT WERE TAKEN OUT OF THE IOLTA ACCOUNT **EXHIBIT 10** TO PAY FOR UTILITY EXPENSES INCURRED BY JOHN MONROE AFTER KIMBERLY MONROE SEPARATED AND MOVED OUT OF THE MARITAL RESIDENCE.

{¶42} On January 8, 2021, the magistrate issued temporary orders agreed to by the parties. The orders instructed Appellee to pay $400/month in temporary spousal support to Appellant, instructed Appellee's attorney to deposit the proceeds from the sale of the marital home into his IOLTA account, and instructed Appellee's attorney to pay two utility bills from his IOLTA account upon receipt of proper documentation. The orders also instructed that the balance of the parties' funds was to remain in the IOLTA account until the parties agreed on dispersal.

{¶43} Appellant contends here that the trial court erred in failing to address $1,375.13, which was taken out of the IOLTA account to pay for the utility debt she alleges was incurred by Appellee at the marital residence after she moved out. She asks this Court to address and resolve this issue.

{¶44} This issue concerns the temporary orders in place prior to the divorce trial. As to temporary orders in divorce cases, this Court has stated:

Temporary orders typically merge into the final order and become moot. It has been explained, "In a domestic relations action, interlocutory orders are merged within the final decree, and the right to enforce an interlocutory

> order does not extend beyond the decree, unless the interlocutory obligation has been reduced to a separate judgment or has been specifically referred to in the decree." *Cotter v. Cotter*, 9th Dist. Summit No. 25656, 2011-Ohio-5629, ¶ 10, citing *Colom v. Colom*, 58 Ohio St.2d 245, 389 N.E.2d 856, syllabus (1979).

*Dimmerling v. Dimmerling*, 7th Dist. Noble No. 18 NO 0460, 2019-Ohio-2710, ¶ 140.

**{¶45}** In this case, the temporary order regarding the payment of the utility bills from the IOLTA account was not reduced to a separate judgment nor was it specifically referred to in the divorce decree. Thus, the order merged into the final judgment and became moot.

**{¶46}** Moreover, Appellant did not raise this issue at trial. An appellant cannot raise an issue on appeal for the first time that could have been raised and resolved in the trial court. *Quick v. Jenkins*, 7th Dist. Columbiana No. 13 CO 4, 2013-Ohio-4371, ¶ 27. Issues not raised to the trial court are deemed waived on appeal. *Id.*

**{¶47}** Accordingly, Appellant's fourth assignment of error is without merit and is overruled.

**{¶48}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Robb, J., concurs.

[Cite as *Monroe v. Monroe*, 2023-Ohio-3332.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division, Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**